Bernice ORTIZ, Plaintiff,

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant.

No. 92 Civ. 0562 (JES).

United States District Court, S.D. New York.

Jan. 19, 1995.

**572**

Legal Services for the Elderly, New York City (Jonathan A. Weiss, of counsel), for plaintiff.

Mary Jo White, U.S. Atty. for the S.D. of N.Y., New York City, Susan D. Baird, Sp. Asst. U.S. Atty.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1988), to obtain an anonymous letter (the "letter") to the Social Security Administration containing allegations about the plaintiff. Defendant, the Department of Health and Human Services ("HHS" or the "Government"), withheld the letter from release on the grounds that disclosure of the letter would reasonably be expected to invade the privacy of the author and that the author is a confidential source of information for law enforcement purposes. The parties have stipulated to the admissibility of certain exhibits for judgment on an undisputed set of facts. *See* Stipulation to Admissibility of Exhibits dated February 18, 1994. For the reasons that follow, the Court finds that the letter is exempt from disclosure.

## BACKGROUND

By letter dated November 14, 1989, plaintiff requested a copy of an anonymous letter sent to the HHS Regional Inspector General for Investigations in New York. *See* Complaint, Ex. A; Declaration of A. Ronald Santo dated February 22, 1993 ("Santo Decl.") ¶ 3. The letter makes allegations of improper conduct by plaintiff. *See* Santo Decl. ¶ 4. Plaintiff claims that those allegations led to a criminal investigation of her age and identity in connection with her receipt of Social Security benefits. *See* Complaint, Ex. A. Ultimately, however, plaintiff was never prosecuted. *See* Joint Exhibit 2, Declaration of Frank J. Nahlik dated December 7, 1993 ("Nahlik Decl."), ¶ 6. In her request, plaintiff stated:

"I request a copy of this letter because I have reason to believe that the information contained in it was procured illegally and that the allegations made in it are false, libelous and slanderous. I intend to take legal action against the parties responsible."

*See* Complaint, Ex. A.

The letter in question was located within the files of the Office of Inspector General for Investigations. *See* Santo Decl. ¶ 4. The agency withheld the letter by a decision dated March 19, 1990. *See* Complaint, Ex. B. By letter dated April 9, 1991, plaintiff appealed the decision. *See* Complaint, Ex. C. On April 23, 1991, the agency affirmed its decision to withhold the letter in order to protect the author's privacy and because the author was a confidential source. *See* Complaint, Ex. D. This action followed.

## DISCUSSION

After the Court denied the parties' cross-motions for summary judgment, the Govern-

ment submitted the anonymous letter for the Court's *in camera* review so that the District Court could make a *de novo* determination of the validity of the agency's exemption claim. *See Department of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 755, 109 S.Ct. 1468, 1472, 103 L.Ed.2d 774 (1989). HHS claims that the anonymous letter is exempt under 5 U.S.C.A. §§ 552(b)(6), (b)(7)(C) and (b)(7)(D) (West 1972 & Supp.1994).

■ Exemption 7(D) permits nondisclosure of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to disclose the identity of a confidential source...." 5 U.S.C.A. § 552(b)(7)(D) (West Supp.1994). This exemption applies to the investigative files of HHS's Office of the Inspector General, in which this letter was located, *see* Santo Decl. ¶ 4, because that agency undertakes investigations that could lead to criminal prosecutions. *See New England Apple Council v. Donovan,* 725 F.2d 139, 143 (1st Cir.1984) ("The functions of OIG ["Inspector General"] investigators are not so different from the functions of FBI agents as to warrant divergent treatment under FOIA exemption 7....").

■ Under Exemption 7(D), the critical inquiry is "not whether the requested *document* is of the type that the agency usually treats as confidential, but whether the particular *source* spoke with an understanding that the communication would remain confidential." *United States Dep't of Justice v. Landano,* —— U.S. ——, ——, 113 S.Ct. 2014, 2019, 124 L.Ed.2d 84 (1993). A source is confidential if it "provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *Id.* (quoting S.Rep. No. 93–1200, at 13 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6267, 6291). Since the anonymous letter at issue here was not solicited by the Government, and therefore the Government cannot claim that it provided the author with an express assurance of confidentiality, the question before the Court is whether the circumstances under which the

anonymous source conveyed the information in the letter support a reasonable inference of an assurance of confidentiality.

In *Landano,* the Supreme Court considered the evidentiary showing that the government must make in order to establish that a source provided information based on an implied assurance of confidentiality. The Supreme Court rejected the argument that there is a presumption that *all* sources supplying information to law enforcement in the course of a criminal investigation are confidential. However, the Court held that more narrowly-defined circumstances can provide a basis for inferring an implied assurance of confidentiality. *Id.,* 113 S.Ct. at 2023. For example, the Court observed that nondisclosure could be justified by examining "the nature of the crime that was investigated or the source's relation to it." *Id.,* 113 S.Ct. at 2024. Particular circumstances that could give rise to an inference of confidentiality also include "the risks an informant might face were [his or her] identity disclosed, such as retaliation, reprisal or harassment." *Massey v. FBI,* 3 F.3d 620, 623 (2d Cir.1993).

Here, the government has provided a particularized showing of circumstances from which confidentiality can reasonably be inferred. The allegations could have lead to criminal proceedings, *see* Nahlik Decl. ¶ 10(a), and indeed did create the impetus for a criminal investigation, *see* Nahlik Decl. ¶¶ 6, 10(a) and (b), and strongly suggest that the anonymous source reasonably expected complete confidentiality. *See Providence Journal Co. v. U.S. Dep't of Army,* 981 F.2d 552, 565–66 (1st Cir.1992) ("At least in circumstances where the allegations might lead to court-martial proceedings, it is reasonable to infer, absent contrary evidence, that an anonymous source reasonably expected complete confidentiality.").

■ Furthermore, because the letter contains highly personal information, it is likely that the anonymous source has a close relationship with the plaintiff. This is especially true since the plaintiff has declared that she is "almost absolutely sure" she knows the author's identity. *See* Affidavit of Bernice Ortiz dated December 9, 1991, ¶ 4; Com-

plaint, Exs. A, E. Under these circumstances, the author's cooperation with the Government could have reasonably been expected to antagonize the plaintiff. *See* Nahlik Decl. ¶ 10(d). Moreover, given the likely close relationship between the author and the plaintiff, it is entirely reasonable to infer that the source knew that the plaintiff might retaliate for the author's implicating her in such an investigation. Indeed, the plaintiff has admitted that the underlying reason that she seeks disclosure of the letter is to identify and then sue the author. *See* Complaint, Ex. A. It is, therefore, reasonable to infer that the anonymous source knew that Ortiz would wish to retaliate and therefore "would hardly have made the charges unless [he or she] w[as] confident [his or her] identit[y] would remain concealed." *Pope v. United States,* 599 F.2d 1383, 1386 (5th Cir.1979); *see also Nix v. United States,* 572 F.2d 998, 1003 (4th Cir.1978); *Maroscia v. Levi,* 569 F.2d 1000, 1002 (7th Cir.1977).

■ The fact that the letter was unsolicited does not negate this implied assurance of confidentiality where, as here, "the agency has somehow put the public on notice that it will accord such treatment to these communications." *Brant Constr. Co. v. EPA,* 778 F.2d 1258 (7th Cir.1985) (finding unsolicited letters received by EPA containing allegations of improper conduct exempt from disclosure); *see also Pope, supra,* 599 F.2d at 1387 (unsolicited letters received by IRS which initiated investigation exempt); *Fedders Corp. v. Federal Trade Comm.,* 494 F.Supp. 325, 328 (S.D.N.Y.1980) (unsolicited complaint letters to FTC exempt), *aff'd without opinion,* 646 F.2d 560 (2d Cir.1980). Here, the Office of the Inspector General, Department of Health and Human Services, maintains a hotline operation to receive telephone calls and other communications from the public concerning possible instances of fraud or other illegal activity. HHS "encourage[s the public] to report fraud in connection with HHS programs to this hotline operation." Nahlik Decl. ¶ 7. Moreover, "it is unrealistic to assume that a majority of persons reporting to an agency what they believe to be illegal or improper acts are legally sophisticated [with regard to] the boundaries of the FOIA exemptions." *See Brant, supra,*

778 F.2d at 1263. The Court finds that these circumstances, viewed together, provide a sufficient basis for inferring that HHS has put the public on notice that it will protect the confidentiality of reports to its hotline operation.

Moreover, despite the fact that the author's name is not on the letter, there are numerous aspects of the letter itself that could lead to discovery of the author's identity. Among these are the typestyle and certain items of information that are mentioned in the letter that would reasonably be known only by a few persons. In addition, the grammar, syntax, and language usage in the letter could identify the author by his or her writing style or could indicate the author's educational level or national origin. *See New York Times Co. v. NASA,* 920 F.2d 1002, 1009 (D.C.Cir.1990) (recognizing that "'syntactic felicity' or lack thereof would reveal 'information about the depth and breadth of [the author's] education'"). Having reviewed the letter *in camera,* the Court finds that disclosure of the letter would be highly likely to identify the author and that, therefore, the lack of a signature on the letter does not afford a sufficient basis to protect the identity of the informant in this case.

Accordingly, the Court finds that since an implied assurance of confidentiality can reasonably be inferred and since disclosure of the letter, even in part, is likely to reveal the identity of its author despite the lack of a signature, this letter fits within the confines of FOIA exemption 7(D) and therefore may be withheld from disclosure.

■ The Government relies also upon Exemption 7(C) to justify withholding the letter. Exemption 7(C) authorizes an agency to withhold records or information compiled for law enforcement purposes to the extent that revealing the information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C.A. § 552(b)(7)(C) (West Supp.1994). Since Exemption 7(C) allows withholding only if an invasion of personal privacy is *unwarranted,* a court considering the applicability of the Exemption must balance the individual's privacy interest against the public interest in

disclosure. *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press, supra,* 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989).

 The privacy interest that Exemption 7(C) protects from disclosure encompasses not only the intimate details of an individual's life but also information that he or she could reasonably assert an option to withhold from the public at large because of its possible· adverse effect. *See United States Dep't of Justice v. Reporters Comm., supra,* 489 U.S. at 763, 109 S.Ct. at 1476 (1989) ("privacy encompass[es] the individual's control of information concerning his or her person."). Therefore, courts have recognized that a source in a government investigation, such as the one conducted on Ortiz, has a substantial privacy interest in keeping his or her participation in the investigation private. *Dunkelberger v. Department of Justice,* 906 F.2d 779, 781 (D.C.Cir.1990) ("[E]xemption 7(C) takes particular note of the 'strong interest' of individuals, whether they be suspects, witnesses, or investigators, 'in not being associated unwarrantedly with alleged criminal activity.' "). Moreover, the source also has a strong privacy interest in not being unnecessarily questioned or harassed by those who look unfavorably upon law enforcement officials or by private litigants in civil suits incidentally related to the investigation. *See Diamond v. FBI,* 707 F.2d 75, 77 (2d Cir.1983), *cert. denied,* 465 U.S. 1004, 104 S.Ct. 995, 79 L.Ed.2d 228 (1984). This is especially true where, as here, in her request for disclosure, Ortiz has indicated a desire to sue the source upon discovery of his or her identity. *See* Complaint, Ex. A. In light of the potential for harassment, intrusion, and stigmatization resulting from disclosure of the source's connection with HHS's criminal investigation, the Court concludes that the author of this letter, which provoked a criminal investigation, has "a substantial interest in seeing that [his or her] participation remains secret." *See Fitzgibbon v. CIA,* 911 F.2d 755, 767 (D.C.Cir.1990) (citation omitted).

 On the other side of the scale is the public interest in disclosure of the letter. Only the interest of the general public, and not that of the private litigant, is relevant to this inquiry. *See Kiraly v. FBI,* 728 F.2d 273, 276 (6th Cir.1984). Thus, the fact that Ortiz has a personal reason for seeking the information does not enter into the balancing process. *See United States Dep't of Defense v. FLRA,* —— U.S. ——, ——, 114 S.Ct. 1006, 1008, 127 L.Ed.2d 325 (1993) ("whether an invasion of privacy is warranted cannot turn on the purposes for which the . . . request is made"); *see also Massey, supra,* 3 F.3d at 625 (2d Cir.1993) (quoting *Stone v. F.B.I.,* 727 F.Supp. 662, 667 (D.D.C.1990) (" 'FOIA was not designed to benefit private litigants.' ")). Rather, the relevant public purpose must be coextensive with FOIA's basic purpose—"to open agency action to the light of public scrutiny." *See Reporters Comm.,* 489 U.S. at 772–73, 109 S.Ct. at 1481–82. Therefore, disclosure of the letter is in the public interest only if it furthers the public's statutorily created "right to be informed about 'what their government is up to.' " *See id.* at 773, 109 S.Ct. at 1482.

 The disclosure that Ortiz seeks will not significantly serve this public purpose. Although in this case disclosure of the letter will reveal a great deal about the source, it will reveal virtually nothing about the conduct of the government. Enabling the public to learn about the conduct of a private citizen is not the type of public interest FOIA was intended to serve. *See id.* Moreover, Ortiz has made no showing, and has not even alleged, that HHS failed to adequately perform its investigative function. *See Massey, supra,* 3 F.3d at 625 (2d Cir.1993).

> "[U]nless there is compelling evidence that the agency denying the FOIA request is engaged in illegal activity, and access to the names of private individuals appearing in the agency's law enforcement files is necessary in order to confirm or refute that evidence, there is no reason to believe that the incremental public interest in such information would ever be significant."

*SafeCard Servs., Inc. v. SEC,* 926 F.2d 1197, 1205–06 (D.C.Cir.1991). Under these circumstances, the Court concludes that the public's interest in investigating HHS's performance by disclosure of this letter is negligible. *Accord id.* Accordingly, since the

letter's source's private interest is substantial while the public interest in disclosure of the information is not, the Court finds that disclosure of the letter would reasonably be expected to constitute an unwarranted invasion of that privacy interest and that HHS properly utilized Exemption 7(C) to withhold the letter.[1]

### CONCLUSION

For the reasons stated above, the Court concludes that the complaint should be dismissed. The Clerk of Court is directed to enter judgment for the defendant and to close the above-captioned action.

**SO ORDERED.**

---

1. HHS also argues that the letter sought by plaintiff falls within the purview of Exemption 6 of FOIA, 5 U.S.C. § 552(b)(6), which covers "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." Since the letter is exempt under FOIA Exemptions 7(C) and 7(D) as protected law enforcement records, the Court need not reach the questions of whether the letter would have also been exempt as a "similar file" and, if so, whether its disclosure "would constitute an unwarranted invasion of personal privacy." The Court notes, however, that the requested letter is not as clearly a "similar" file within the scope of Exemption 6 as it is an "investigative record" within the scope of Exemption 7.