**Bernice ORTIZ, Plaintiff–Appellant,**

v.

**UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant–Appellee.**

**No. 249, Docket 95–6050.**

United States Court of Appeals, Second Circuit.

Argued Oct. 25, 1995.

Decided Nov. 22, 1995.

Jonathan A. Weiss, New York City (Legal Services for the Elderly, Andrew J. Connick, of counsel), for Plaintiff–Appellant.

Susan D. Baird, New York City, Assistant United States Attorney for the Southern District of New York (Mary Jo White, United States Attorney for the Southern District of New York, Steven I. Froot, Assistant United States Attorney, of counsel), for Defendant–Appellee.

Before FEINBERG, OAKES and CALABRESI, Circuit Judges.

FEINBERG, Circuit Judge:

Plaintiff Bernice Ortiz seeks disclosure under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, of a document held by the Social Security Administration (SSA). The document is an unsigned letter received unsolicited by the Regional Inspector General for Investigations in New York of defendant Department of Health and Human Services (HHS). Ortiz contends that the letter contains false allegations concerning her eligibility to receive social security benefits. The letter resulted in a criminal investigation of Ortiz's eligibility, but HHS closed the investigation without charging Ortiz with a crime. Apparently, her benefits were not delayed, suspended or rescinded as a result of the investigation. Ortiz appeals from a judgment entered in January 1995 in the United States District Court for the Southern District of New York, John E. Sprizzo, J., finding the letter to be exempt from disclosure and dismissing her complaint. For the reasons stated below, we affirm.

## I. Background

In November 1989, Ortiz requested disclosure of the letter from HHS.[1] Her request was denied in March 1990. The reason given by HHS for the denial was that under 5 U.S.C. § 552(b)(7)(D) (Exemption 7(D)) the letter was exempt from FOIA disclosure because its release could disclose the identity of a confidential source. Ortiz's administrative appeal to HHS was denied in April 1991. The reasons given for the denial of the appeal were that the appeal was filed out of time, and that the letter was exempt from disclosure under both Exemption 7(D) and 5 U.S.C. § 552(b)(7)(C) (Exemption 7(C)), which authorizes the withholding of records

---

1. The SSA was separated from the HHS and became an independent agency effective March 31, 1995. See Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103–296, §§ 101, 110, 108 Stat. 1464, 1465, 1490 (1994). SSA is now properly the defendant in Ortiz's suit, id. at § 106(d), but at all relevant times prior to this appeal the letter was located in the files of HHS.

where disclosure could constitute an unwarranted invasion of personal privacy.

In January 1992, Ortiz filed suit in the district court challenging HHS's determination and seeking disclosure of the letter. The parties stipulated to the admissibility of certain exhibits for judgment on an undisputed set of facts. Reviewing the letter in camera and conducting a de novo review of HHS's decision, the district court determined in a written opinion that the agency had properly withheld the letter. See 874 F.Supp. 570 (S.D.N.Y.1995). The court found that Exemption 7(D) applied because the author was properly considered to be a confidential source and disclosure of any part of the letter was likely to reveal the author's identity. Id. at 574. Exemption 7(C) also applied because, balancing the privacy interest of the author of the letter against the public interest in disclosure, release of the letter would reasonably be expected to constitute an unwarranted invasion of privacy. Id. at 575–76. As indicated below, we find it necessary to consider only the Exemption 7(D) ruling.

## II. Discussion

■■■ FOIA embodies a policy of encouraging public scrutiny of government agencies by permitting broad access to records and other information. See *Department of the Air Force v. Rose,* 425 U.S. 352, 360–62, 96 S.Ct. 1592, 1599–1600, 48 L.Ed.2d 11 (1976). In FOIA cases, the government bears the burden of establishing that any exemption from disclosure applies. See 5 U.S.C. § 552(a)(4)(B). Courts must construe FOIA's statutory exemptions narrowly in favor of disclosure. See *John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 152, 110 S.Ct. 471, 475, 107 L.Ed.2d 462 (1989).

■■■ 5 U.S.C. § 552(b)(7), which is set out in full in the margin, provides that certain law enforcement records are exempt from disclosure.[2] In order to be exempt, the government must demonstrate that (1) the document was compiled for law enforcement purposes, and (2) release of the material would result in one of the harms, see note 2, enumerated in the statute. See *Ferguson v. FBI,* 957 F.2d 1059, 1065 (2d Cir.1992).

■■■ Exemption 7(D) provides, in relevant part, that records or information "compiled for law enforcement purposes" may be withheld from disclosure if production "could reasonably be expected to disclose the identity of a confidential source." Exemption 7(D) is meant to (1) protect confidential sources from retaliation that may result from the disclosure of their participation in law enforcement activities, see *Brant Construction Co. v. United States EPA,* 778 F.2d 1258, 1262 (7th Cir.1985), and (2) "encourage cooperation with law enforcement agencies by enabling the agencies to keep their informants' identities confidential." *United Technologies Corp. v. NLRB,* 777 F.2d 90, 94 (2d Cir.1985).

### A. Law Enforcement Purposes

■■■ The letter in this case was compiled for law enforcement purposes. HHS's Office of Inspector General (OIG) used the letter to launch a criminal investigation of Ortiz. The letter was kept in OIG's investigative files. An Inspector General of a federal govern-

---

**2.** 5 U.S.C. § 552(b)(7) provides:

(b) [The FOIA disclosure obligation] does not apply to matters that are—

(7) *records or information compiled for law enforcement purposes,* but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) *could reasonably be expected to disclose the identity of a confidential source,* including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual. . . . (emphasis added)

ment agency engages in law enforcement activities within the meaning of FOIA. See *Providence Journal Co. v. United States Dept. of the Army,* 981 F.2d 552, 563 n. 13 (1st Cir.1992) (Army Inspector General); *Brant Construction Co.,* 778 F.2d at 1265 (Environmental Protection Agency Inspector General); *New England Apple Council v. Donovan,* 725 F.2d 139, 143 (1st Cir.1984) (Dept. of Labor Inspector General).

Ortiz argues that because no actual crime was found to be committed and HHS's criminal investigation has ceased, there is no longer any valid law enforcement purpose to protect by withholding the letter. Exemption 7(D) is not limited to law enforcement activities where a crime was actually committed. The statutory scheme of preventing harm to the source and the agency's activities resulting from disclosure does not depend upon the actual existence of a crime. The status of the investigation is likewise immaterial to the application of the exemption. See *Brant Construction Co.,* 778 F.2d at 1265 n. 8 ("if the statutory requirements of 7(D) are met, exemption from disclosure is not extinguished with the termination of the investigation"); *Pope v. United States,* 599 F.2d 1383, 1387 (5th Cir.1979) ("Exemption 7 is not rendered unavailable by termination of [an] active investigation. . . ."). Cf. *Diamond v. FBI,* 707 F.2d 75, 76–77 (2d Cir.1983) (documents do not lose their 7(D) exemption due to the passage of time), cert. denied, 465 U.S. 1004, 104 S.Ct. 995, 79 L.Ed.2d 228 (1984).

## B. Confidential Source

■ The further application of Exemption 7(D) to the letter hinges on determining if the author was a "confidential source" for FOIA purposes. "[A] source is confidential within the meaning of Exemption 7(D) if the source 'provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.'" *United States Dept. of Justice v. Landano,* —— U.S. ——, ——, 113 S.Ct. 2014, 2019, 124 L.Ed.2d 84 (1993) (quoting S.Rep. No. 93–1200, p. 13 (1974) U.S.Code Cong. & Admin.News, pp. 6267, 6291). In this case, the letter was unsolicited by HHS, and there is no evidence that there has been any other contact between HHS and the author. Therefore, there could have been no assurance of confidentiality expressed to the author of the letter.

■ Absent express assurance, HHS must show that the particular circumstances surrounding a communication give rise to an implied assurance of confidentiality. In such a situation, "the question is not whether the requested *document* is of the type that the agency usually treats as confidential, but whether the particular *source* spoke with an understanding that the communication would remain confidential." *Landano,* —— U.S. at ——, 113 S.Ct. at 2019 (emphasis in original).

In *Landano,* the Supreme Court addressed the evidentiary showing that the government must make in order to establish an implied assurance of confidentiality. Id. at ——, 113 S.Ct. at 2017. The Court rejected a blanket presumption of implied confidentiality for any source who supplies information to the FBI during a criminal investigation, and required a particularized showing for each communication. Id. at ——, 113 S.Ct. at 2021–23. Factors mentioned by the Court as having relevance to such a showing included "the character of the crime at issue" and "the source's relation to the crime." Id. at ——, 113 S.Ct. at 2023. This court has also stated that "courts may look to the risks an informant might face were her identity disclosed, such as retaliation, reprisal or harassment, in inferring confidentiality." *Massey v. FBI,* 3 F.3d 620, 623 (2d Cir.1993).

■ It is true that the allegation of illegal activity in question here has little similarity to the gang-related murder in *Landano.* Nevertheless, we see no reason not to consider the same factors as relevant in both contexts. The reasoning of *Landano* is not confined to situations of violent crime and the possibility of equally violent retaliation. Exemption 7(D) protects the identity of a confidential source in civil as well as criminal law enforcement situations, and the protection extends to situations where the danger of retaliation encompasses more than the source's physical safety. See *Irons v. FBI,* 880 F.2d 1446, 1451 (1st Cir.1989) (en banc).

Cf. 5 U.S.C. § 552(b)(7)(F) (FOIA exemption which specifically covers situations where disclosure could "endanger the life or physical safety of any individual").

■ After in camera review of the letter, we believe that the particular circumstances surrounding the communication of the information supplied by the author of the letter supports a finding of an implied assurance of confidentiality.

The letter concerned allegations of improper conduct by Ortiz that the author considered to be serious and possibly in violation of the law. The author could have reasonably concluded, indeed probably intended, that the letter would prompt a criminal investigation—as it did. Other circuits have held that serious and damaging allegations of misconduct that could initiate criminal investigations or lead to other serious sanctions can reflect an implied assurance of confidentiality. See *Providence Journal*, 981 F.2d at 565–66 (allegations that might have led to court-martial proceedings); *Pope*, 599 F.2d at 1386–87 (information given was intended to "provoke or contribute to" an investigation of attorney's fitness to practice in front of the Internal Revenue Service).

Also, it is evident from the nature of the allegations and the contents of the letter that the author was aware of personal details of Ortiz's life. It is reasonable to assume that knowledge of such details places the source of that information in close relationship with, or proximity to, Ortiz. This close relationship to the alleged wrongdoing further supports an implied assurance of confidentiality.

The possibility of retaliation or harassment is reasonable and genuine in a case such as this one where serious allegations are made by someone who may be quite close to the object of those allegations. As stated above, retaliation need not be violent to implicate Exemption 7(D). See United Technologies, 777 F.2d at 94 ("An employee-informant's fear of employer retaliation can give rise to a justified expectation of confidentiality."). In order to reach this conclusion, we need not consider the admission by Ortiz that she seeks the letter with the specific intention of suing the author. Nor must we determine if Ortiz's planned retaliation is unwarranted or improper. It is enough that retaliation might naturally flow from non-confidential treatment of the source's information and identity.

Ortiz argues that an assurance of confidentiality cannot be inferred when the source remains anonymous to the agency and when the information provided was unsolicited by it. Ortiz says that anonymity negates an implied assurance of confidentiality, arguing that "if the letter-writer's expectation was that the letter would be kept secret, as the Government contends, there would have been no need for the letter-writer to fail to sign the letter. The lack of a signature is proof-positive that the letter-writer anticipated that the letter might be provided to Mrs. Ortiz." We think this view flies in the face of a common-sense interpretation of anonymity as the desire to keep one's identity secret for any and all purposes. The wisdom of applying Exemption 7(D) to sources who choose anonymity is apparent in this case, where anonymity would not necessarily protect the author's identity if disclosure of the unsigned letter were allowed. It is true that anonymity primarily shows that a source wants to remain confidential rather than that there was any assurance that the source would be treated as confidential. But in the absence of any contrary evidence from the surrounding circumstances, we view anonymity as an additional factor supporting an implied assurance of confidentiality. See *Providence Journal*, 981 F.2d at 566.

With respect to the unsolicited nature of the communication, it is not necessary to require some direct form of communication between the informant and the agency on the issue of confidentiality. In *Brant Construction Co.*, the Seventh Circuit addressed the application of an implied assurance of confidentiality to unsolicited communications by formulating the following test: "that in light of the information and surrounding circumstances, the communication in all likelihood would not have been made if confidentiality had not been assured." 778 F.2d at 1264. Under these circumstances, where serious allegations were made by a source who chose to remain anonymous and was privy to information of a personal nature regarding Ortiz

which could reasonably have been thought to lead to a criminal investigation, it is reasonable to presume that the information would not have been provided if confidentiality had not been assured. The record does not show that HHS has taken any action inconsistent with such an assurance subsequent to receipt of the letter. HHS has generally made efforts, through the establishment of a telephone hotline (where information can be taken on an anonymous basis), to encourage the general public's cooperation in combatting fraud in their programs. Extending confidentiality to such communications reflects a common-sense judgment given the importance and personal nature of the entitlement programs administered by HHS.

Considering all of the factors discussed above—the serious nature of the allegations, the author's apparently close relationship to Ortiz, the possibility of retaliation, and the author's anonymity—and without relying solely on any one of them, we conclude that the author spoke under an implied assurance of confidentiality and was therefore a confidential source within the meaning of Exemption 7(D).

## C. Disclosure of the Confidential Source's Identity

■■■ The final Exemption 7(D) requirement is that release of the letter "could reasonably be expected to disclose the identity of a confidential source." The district court determined that a number of specific elements of the letter could reasonably lead to discovery of the author's identity. These included the grammar, syntax and language used in the letter, its typestyle, and certain items contained in the letter that would be known to only a few people. See 874 F.Supp. at 574. Upon review of the letter, we see no reason to question this determination.

Although it does not form the basis of our decision, in this case Ortiz seeks the letter for the specific purpose of inflicting the pre-

cise harm that Exemption 7(D) seeks to prevent. A proper analysis of Exemption 7(D) ordinarily concerns the law enforcement nature of the activities of the agency and the circumstances of the communication with the confidential source, not the specific purposes or interests of the party seeking disclosure. See *United States Dept. of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 771, 109 S.Ct. 1468, 1480–81, 103 L.Ed.2d 774 (1989) ("Congress 'clearly intended' the FOIA 'to give *any* member of the public as much right to disclosure as one with a special interest [in a particular document].'") (alteration in original) (emphasis added) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149, 95 S.Ct. 1504, 1515–16, 44 L.Ed.2d 29 (1975)). However, Ortiz's candor in her communications with HHS and in her complaint and supporting affidavit makes explicit that this is precisely the type of situation that the statutory exemption seeks to address; namely, an aggrieved individual seeking information from a law enforcement agency that would lead to the discovery of the identity of an informant who offered information on a confidential basis in order to take action against that informant.

## III. Conclusion

We have considered all of Ortiz's arguments that the district court erred in relying on Exemption 7(D) in refusing to release the letter, and we find them to be without merit. The district court properly found that the government has met its burden of demonstrating that Exemption 7(D) applies. The judgment of the district court is affirmed.[3]

■■■

---

**3.** On this view, we need not address HHS's contentions that (1) the requirements of Exemption 7(D) are also met in this instance because the letter is information furnished by a confidential source that was compiled in the course of a

criminal investigation and (2) disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy and the letter should be exempt from disclosure under Exemption 7(C).