**K. Lesli LIGORNER, Plaintiff,**

v.

**Janet RENO & United States Department of Justice, Defendants.**

**No. 97 Civ. 4132(SAS).**

United States District Court,
S.D. New York.

March 26, 1998.

K. Lesli Ligorner, New York City, pro se.

Andrew W. Schilling, Assistant United States Attorney, New York City, for Defendant.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

On May 6, 1997, *pro-se* plaintiff, K. Lesli Ligorner, filed this action against the United States Department of Justice and Attorney General Janet Reno pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(B), seeking to compel defendants to disclose a two-page document. Defendants have moved for summary judgement, and plaintiff has countered with a motion to compel *in camera* review of the document. For the reasons stated below, defendant's motion is granted, and the cross-motion is denied.

### FACTUAL BACKGROUND

On December 7, 1995, plaintiff wrote to the Department of Justice ("DOJ") requesting disclosure of "any written communications, other than formal orders and decisions, received by the Department of Justice from judges or other personnel of the United States Court of Appeals for the Sixth Circuit regarding the case of John Demjanjuk." Complaint ¶ 4 ("Compl."). Demjanjuk, an alleged former Nazi guard, was extradited to Israel to face murder charges, after a long, contentious litigation. Pl.Memo. at p. 3. After Demjanjuk's extradition, a Sixth Circuit panel reopened the case to determine whether the prosecutors committed a fraud on the court. *Id.* The panel found that the prosecutors had withheld information recklessly. *Id.; see Demjanjuk v. Petrovsky,* 10 F.3d 338 (6th Cir.1993), *cert. denied sub nom Rison v. Demjanjuk,* 513 U.S. 914, 115 S.Ct. 295, 130 L.Ed.2d 205 (1994). Plaintiff requested the documents because she was writing a law review article about *United States v. Lindert,* 907 F.Supp. 1114 (N.D.Ohio 1995), which concerned the attempted denaturalization of the plaintiff based upon his alleged former acts as a participant in Nazi-sponsored persecution.

Pursuant to DOJ policy, plaintiff's request was processed by the DOJ Office of Information and Policy ("OIP"). *See* Declaration of Michael B. Shaheen, Jr., Counsel on Professional Responsibility, November 25, 1997, at ¶ 3 ("Shaheen Decl."). Through its search, OIP recovered four documents that satisfied plaintiff's request. *Id.* OIP sent three of these to plaintiff. The fourth, a two-page document, was forwarded to the DOJ Office of Professional Responsibility ("OPR") to determine whether it could be released. *Id.* at ¶ 4–5. OPR has jurisdiction to investigate allegations of misconduct by DOJ attorneys that "relate to their authority to investigate, litigate or provide legal advice, and allegations of misconduct by law enforcement personnel when they are related to allegations of misconduct by attorneys within the jurisdiction of OPR." *Id.* at ¶ 2.

Originally, OIP withheld the document pursuant to 5 U.S.C. § 552(b)(6). *Id.* However, after further review of the document by the OPR, it determined that the document could be withheld under either Exemption 6, 5 U.S.C. § 552(b)(6) or Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), because it was part of an OPR investigative file in a matter related to the Demjanjuk case. *See* Shaheen Decl. at ¶ 5. The Shaheen Declaration did not give any information about the content of the withheld document other than to describe it as part of OPR's "law enforcement records." *Id.* Shaheen went on to describe the importance of confidentiality in OPR investigations, and to recite a list of potential OPR contacts (i.e. defendants, DOJ personnel, defendants' attorneys, judges or court personnel, etc.) in any given investigation. *Id.* at ¶ 6.

In fact, the two-page document was a complaint letter which contained the identity of an individual who accused another of misconduct, as well as the identity of the accused. *See* Declaration of Richard M. Rogers, Acting Counsel on Professional Responsibility, January 8, 1998, at ¶ 3 ("Rogers Decl."). Moreover, it is the policy of OPR that any information provided to it, for the purposes of investigation, will be kept strictly confidential, and disseminated only on a need to know basis. *Id.* at ¶ 3; Shaheen Decl. ¶ 6.[1]

Plaintiff appealed OIP's decision to withhold the two-page document. *See* DOJ–Ligorner correspondence from April 4, 1996 – January 17, 1997. After plaintiff's appeals were exhausted within the DOJ, she filed this action to compel disclosure of the two-page document.

In January 1998, the Rogers Declaration was submitted by defendants to address concerns raised by plaintiff with respect to lack of detail in the Shaheen Declaration. *See* Rogers Decl. at ¶ 3. The Rogers Declaration does more than merely make conclusory statements about the applicability of the claimed exemptions; rather, it describes the document that was withheld, and explains why the document falls within the articulated exemptions. The Rogers Declaration explains that the withheld document is a complaint letter, containing the names of individuals who appear in an OPR investigatory file, including "an individual who was accused of misconduct and an individual who submitted an allegation of misconduct to the [DOJ]." Rogers Decl. ¶ 3. While the Shaheen Declaration explains that the withheld document is also a part of an OPR investigatory file, Shaheen Decl. ¶ 5, the Rogers Declaration provides more detail. In addition, the Rogers Declaration explains why redaction would not adequately protect the privacy interests involved. *See* Rogers Decl. ¶ 4.[2] The two declarations constitute the bulk of the government's evidence.

## DISCUSSION

### 1. Legal Framework

■ FOIA was enacted to "facilitate public access to Government documents." *U.S. Dept. of State v. Ray,* 502 U.S. 164, 173, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991). The philosophy behind FOIA is that with open access to Government documents, the public is better able to scrutinize agency action. *Dept. of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 772, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). Within FOIA, Congress created nine exemptions to the general rule of agency disclosure, 5 U.S.C. § 552(b), all of which are construed narrowly, "with doubts resolved in favor of disclosure." *Federal Labor Relations Auth.*

---

1. 28 C.F.R. § 0.39b provides in relevant part: that "[w]henever any employee of or applicant to the Department provides information" to the OPR "the Counsel and the internal inspection unit shall maintain the confidentiality of the employee or applicant unless the employee or applicant consents to the release of his or her identity or the Counsel determines that the disclosure of the identity is necessary to resolve the allegation." Shaheen Decl. ¶ 6.

2. Rogers Decl. ¶ 4 reads in relevant part:

"Redaction ... would not adequately protect the privacy of the individuals whose names appear in the Withheld Document.... In light of the narrow scope of plaintiff's FOIA request and OPR's acknowledgment that the Withheld Document is located in an investigative file, the disclosure of any portion of the text of the document would allow the public to deduce the identities of the individuals whose names appear in the document from the context of the document."

*v. United States Dept. of Veterans Affairs*, 958 F.2d 503, 508 (2d Cir.1992).

A federal court reviews an agency's decision to withhold or redact records requested under FOIA de novo. *See* 5 U.S.C. § 552(a)(4)(B). In order to prevail on a summary judgement motion in a FOIA case, the defending agency has the burden of proving that it conducted an adequate search and that any withheld or redacted documents fall within an exemption to the FOIA. *See* 5 U.S.C. § 552(a)(4)(B); *EPA v. Mink*, 410 U.S. 73, 79, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973).

 Affidavits and unsworn declarations may sustain an agency's burden if they (1) provide facts which indicate that the agency's search was thorough; and (2) supply, in reasonable detail, an explanation of why withheld documents fall within a stated exemption. *Carney v. United States Dept. of Justice*, 19 F.3d 807, 812 (2d Cir.1994). These affidavits and unsworn declarations submitted by an agency are "accorded a presumption of good faith." *Id.* (quoting *Safe-Card Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C.Cir.1991)). *In camera* review of withheld documents is justified only if the plaintiff can (1) impugn the agency's affidavits or declarations by a showing of agency bad faith; or (2) "provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgement is otherwise inappropriate." *Carney*, 19 F.3d at 813.

**2. Exemptions 6 and 7(C)**

 Plaintiff does not question the thoroughness of the DOJ search in response to her FOIA request. *See generally* Complaint; Plaintiff's May 16, 1996 letter to the OIP ("Pl.Ltr.1"); and Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgement ("Pl.Memo."). Instead, plaintiff challenges the accuracy of the DOJ's characterization of the withheld document as exempt under FOIA. *Id.* The Rogers and Shaheen Declarations provide evidence, in reasonable detail, that the withheld document falls within exemption 6, 5 U.S.C. § 552(b)(6), and/or exemption 7(C), 5 U.S.C.

§ 552(b)(7)(C), of FOIA. Exemption 6 protects from disclosure:

> personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

5 U.S.C. § 552(b)(6). Exemption 7(C) protects from disclosure:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to constitute an unwarranted invasion of privacy.

5 U.S.C. § 552(b)(7)(C). Under both exemption 6 and 7(C), the agency must balance privacy interests against the public interest in disclosure. *U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 756, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) ("*Reporters Committee*"). The Supreme Court has held that under exemption 7(C) the "standard for evaluating privacy interests ... is somewhat broader" than under exemption 6. *Id.* Here, the privacy interests outweigh the public interest in disclosure under either exemption.

**A. Law Enforcement Purposes**

The withheld document was prepared for law enforcement purposes. This document may have triggered an investigation of an individual accused of misconduct, and it may outline the relationship between the accuser and the accused. Under either scenario, the government asserts that the document was used during an internal investigation. The document was kept in OPR's investigative files, and OPR is undoubtedly concerned with law enforcement activities within the DOJ. This court recently found that a similar letter, which was used to launch a criminal investigation by the U.S. Department of Health and Human Services' Office of Inspector General, was prepared for law enforcement purposes. *See Ortiz v. United States Dept. of Health and Human Servs.*, 70 F.3d 729, 732 (2d Cir.1995).

 It is settled law that "an Inspector General of a federal government agency engages in law enforcement activities within the meaning of FOIA." *Id.* (internal citations

omitted). Investigative files of OPR, the internal investigative arm of the Department of Justice, should be viewed in the same light. *See, e.g., Beck v. Dept. of Justice,* 997 F.2d 1489, 1492 (D.C.Cir.1993) (OPR not required to prove that their documents were prepared for law enforcement purposes, though it refused to confirm or deny the existence of OPR records concerning two drug enforcement agents). As a document prepared for law enforcement purposes, the withheld document falls squarely within Exemption 7(C) in that disclosure of such a document would reasonably be expected to constitute an "unwarranted invasion of privacy."

## B. Similar Files

Under Exemption 6, "personnel, medical or similar files" are withheld where disclosure would constitute a clearly unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(6). "Similar files" refers to files that have a privacy value which is similar to those found in medical or personnel files. *See Lawyers Committee for Human Rights v. Immigration and Naturalization Servs.,* 721 F.Supp. 552, 563 (S.D.N.Y.1989) (citing *Dept. of Air Force v. Rose,* 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976)). Because the withheld document would reveal the identities of individuals, even if the names are redacted, it is "similar" to personnel or medical records. *See United States Dept. of State v. Ray,* 502 U.S. 164, 175–177, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991) (redaction of interview summaries necessary to maintain secrecy of identities of interviewees).

Redaction of the names of the accuser and the accused in the two-page complaint letter would not protect their identities. Rogers Decl. at ¶ 4. Based upon the narrow scope of plaintiff's FOIA request and the outcome of the Demjanjuk case, the public could deduce the identities of the individuals whose names appear in the document from its context. *Id.* Knowing the identity of the individual accused of misconduct and that of the accuser would make redaction of the actual names useless.

In *Ray,* the Supreme Court held that summaries of interviews of Haitian nationals after their return to Haiti, constituted "similar files" for FOIA purposes. *See Ray,* 502 U.S. at 175–77. A key factor in this determination was that the interview summaries contained a great deal of personal details about the particular interviewees. *Id.* Without redaction, the identities would be revealed, potentially subjecting the interviewees to severe retaliation. *Id.* In the event that the identities were revealed, the Court found that the invasion of privacy would be so significant that Exemption 6 protected the names from disclosure. *Id.* (holding redaction of names in interview summaries permitted by FOIA, and necessary in this case).

Here, redaction would be an ineffective method to secure the identities of the individuals whose names appear in the document. Moreover, the information contained in the withheld two-page complaint letter is a matter of personal privacy; as such, it falls within the realm of information regulated by Exemption 6. *See, e.g., Reporters Committee,* 489 U.S. at 762–64, 109 S.Ct. 1468 (rap sheets are a matter of personal privacy covered by Exemption 6). Considering the private nature of the material contained in the document and the high probability that the identities of the accused and accuser will be discerned, the invasion of privacy appears to be protected by Exemption 6.

Because the document so clearly falls within Exemption 7(C), and possibly within Exemption 6, I will now focus on the balance between the privacy interests at stake and the public interest in disclosure. This balancing test would be necessary for either Exemption 6 or 7(C).

## C. Balance of Interests

The Supreme Court has repeatedly held that the public interest in disclosure in all FOIA cases is derived from the purpose of the Act—promoting public scrutiny of agency action. *See Reporters Committee,* 489 U.S. at 763, 109 S.Ct. 1468; *Ray,* 502 U.S. at 178, 112 S.Ct. 541. Disclosure furthers this statutory purpose only when the official information "sheds light on an agency's performance of its statutory duties." *Reporters Committee,* 489 U.S. at 773, 109 S.Ct. 1468. If the information sought

through FOIA does not "shed light" on agency conduct, but rather focuses on isolated low-level, alleged government wrongdoers, it does not serve a substantial public interest. *See Beck v. Department of Justice*, 997 F.2d at 1493.

When compared with the privacy interests of the person accused of misconduct and the accuser, the public interest in disclosure of their identities is de minimis. Indeed, in *Reporters Committee*, the Supreme Court made clear that the names of the parties were "irrelevant to the inquiry into the way" an agency acts. *Id.* at 773, 109 S.Ct. 1468.

Redaction is often the best way to protect the identities of individuals in a withheld document. However, with this two-page complaint letter, the government is adamant that even after redaction, the identities of the individuals whose names appear in the investigatory file would be obvious. *See* Rogers Decl. at ¶ 4. Identifying these individuals would potentially subject them to retaliation and discrimination, and might discourage whistleblowers from coming forward in the future.

▮ The government asserts that the OPR has an express or implied agreement of confidentiality with all of those who provide information to OPR to the effect that the information will only be disseminated within the DOJ on a "strict need to know" basis. *Id.* at ¶ 3. A "confidential source" under FOIA "provide[s] information under an express assurance of confidentiality or in circumstances from which such an assurance can be reasonably inferred." *See Ortiz v. United States Dept. of Health and Human Servs.*, 70 F.3d 729, 733 (2d Cir.1995) (citing *United States Dept. of Justice v. Landano*, 508 U.S. 165, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993)) (internal citation omitted). While this definition usually applies to Exemption 7(D), which specifically exempts information that could "reasonably be expected to disclose the identity of a confidential source," it is relevant here as well. Although there is no claim that the withheld document falls within Exemption 7(D), the fact that it might be

covered by that category suggests that the privacy interests of the confidential source in this law enforcement investigation are extremely significant. Moreover, the public interest in disclosure is not sufficient to outweigh the "clearly unwarranted" invasion of privacy protected by the stricter Exemption 6 standard.

### D. *In Camera* Review

*In camera* review is only necessary when the evidence presented by the government is insufficient on its face to establish that nondisclosure is required, or when there is some evidence of agency bad faith. *See Carney v. United States Dept. of Justice*, 19 F.3d at 812. In the absence of bad faith, the government's evidence must be examined to insure that there is a reasonably detailed explanation for withholding a requested document. *Id.*

▮ The Rogers Declaration is as detailed as it could be without revealing the identities of the individuals whose names appear in the investigatory file. The government is not required to disclose the names of specific individuals who might be adversely affected, in order to meet the specificity requirement. *See Ray*, 502 U.S. at 178, 112 S.Ct. 541. Instead, courts have found that the government has met its burden of proof by explaining, in reasonable detail,[3] (1) the nature of the document, and (2) the kind of privacy interests at stake. *Id.* Here, the Declarations disclose that the withheld document is a complaint letter that contains the identities of individuals whose names appear in an OPR investigatory file, "including an individual who was accused of misconduct and an individual who submitted an allegation of misconduct to the DOJ." Rogers Decl. at ¶ 3. The Declarations establish the FOIA exemptions that OPR and OIP relied upon when they decided to withhold the document, and describe the potential for harm in the event of disclosure. *See* Shaheen Decl. at ¶¶ 4–7; Rogers Decl. at ¶¶ 3–5. No further information is required.

---

3. "Reasonable detail," for these purposes, means that pertinent information is provided, without jeopardizing the function of the articulated FOIA

exemption. *See Ray*, 502 U.S. at 178, 112 S.Ct. 541; *Carney*, 19 F.3d at 812.

## CONCLUSION

For the reasons outlined above, defendants' Motion for Summary Judgement is granted, and plaintiff's Cross–Motion for *in camera* review is denied. The Clerk is directed to close this case.

SO ORDERED.