# UNITED STATES DEPARTMENT OF JUSTICE
## ET AL. *v.* LANDANO

No. 91–2054.   Argued February 24, 1993—Decided May 24, 1993

*John F. Daly* argued the cause for petitioners. With him on the briefs were *Solicitor General Starr, Assistant Attorney General Gerson, Deputy Solicitor General Roberts, Acting Solicitor General Bryson, Edwin S. Kneedler,* and *Leonard Schaitman.*

*Neil Mullin* argued the cause for respondent. With him on the brief were *Nancy Erika Smith, Eric R. Neisser,* and *Alan B. Morrison.*

JUSTICE O'CONNOR delivered the opinion of the Court.

Exemption 7(D) of the Freedom of Information Act, 5 U. S. C. § 552 (FOIA), exempts from disclosure agency records "compiled for law enforcement purposes . . . by criminal law enforcement authority in the course of a criminal investigation" if release of those records "could reasonably be expected to disclose" the identity of, or information provided by, a "confidential source." § 552(b)(7)(D). This case concerns the evidentiary showing that the Government must make to establish that a source is "confidential" within the meaning of Exemption 7(D). We are asked to decide whether the Government is entitled to a presumption that all sources supplying information to the Federal Bureau of Investigation (FBI or Bureau) in the course of a criminal investigation are confidential sources.

I

Respondent Vincent Landano was convicted in New Jersey state court for murdering Newark, New Jersey, police officer John Snow in the course of a robbery. The crime received considerable media attention. Evidence at trial showed that the robbery had been orchestrated by Victor Forni and a motorcycle gang known as "the Breed." There

was testimony that Landano, though not a Breed member, had been recruited for the job. Landano always has maintained that he did not participate in the robbery and that Forni, not he, killed Officer Snow. He contends that the prosecution withheld material exculpatory evidence in violation of *Brady* v. *Maryland,* 373 U. S. 83 (1963).

Although his efforts to obtain state postconviction and federal habeas relief thus far have proved unsuccessful, see *Landano* v. *Rafferty,* 897 F. 2d 661 (CA3), cert. denied, 498 U. S. 811 (1990); *Landano* v. *Rafferty,* 856 F. 2d 569 (CA3 1988), cert. denied, 489 U. S. 1014 (1989); *State* v. *Landano,* 97 N. J. 620, 483 A. 2d 153 (1984), Landano apparently is currently pursuing a *Brady* claim in the state courts, see *Landano* v. *Rafferty,* 970 F. 2d 1230, 1233–1237 (CA3), cert. denied, 506 U. S. 955 (1992); Brief for Petitioners 3, n. 1. Seeking evidence to support that claim, Landano filed FOIA requests with the FBI for information that the Bureau had compiled in the course of its involvement in the investigation of Officer Snow's murder. Landano sought release of the Bureau's files on both Officer Snow and Forni. The FBI released several hundred pages of documents. The Bureau redacted some of these, however, and withheld several hundred other pages altogether.

Landano filed an action in the United States District Court for the District of New Jersey seeking disclosure of the entire contents of the requested files. In response, the Government submitted a declaration of FBI Special Agent Regina Superneau explaining the Bureau's reasons for withholding portions of the files. The information withheld under Exemption 7(D) included information provided by five types of sources: regular FBI informants; individual witnesses who were not regular informants; state and local law enforcement agencies; other local agencies; and private financial or commercial institutions. Superneau Declaration, App. 28. Agent Superneau explained why, in the Government's view, all such sources should be presumed confiden-

tial. The deleted portions of the files were coded to indicate which type of source each involved. The Bureau provided no other information about the withheld materials. *Id.*, at 33–41.

On cross-motions for summary judgment, the District Court largely rejected the Government's categorical explanations. See 751 F. Supp. 502 (NJ 1990), clarified on reconsideration, 758 F. Supp. 1021 (NJ 1991). There was no dispute that the undisclosed portions of the Snow and Forni files constituted records or information compiled for law enforcement purposes by criminal law enforcement authority in the course of a criminal investigation. The District Court concluded, however, that the Government had not met its burden of establishing that each withheld document reasonably could be expected to disclose the identity of, or information provided by, a "confidential source." Although the court evidently was willing to assume that regular FBI informants were confidential sources, it held that the FBI had to articulate "case-specific reasons for non-disclosure" of all other information withheld under Exemption 7(D). 751 F. Supp., at 508.

The Court of Appeals for the Third Circuit affirmed in relevant part. 956 F. 2d 422 (1992). Relying on legislative history, the court stated that a source is confidential within the meaning of Exemption 7(D) if the source received an explicit assurance of confidentiality or if there are circumstances " 'from which such an assurance could reasonably be inferred.' " *Id.*, at 433 (quoting S. Rep. No. 93–1200, p. 13 (1974)). An "assurance of confidentiality," the court said, is not a promise of absolute anonymity or secrecy, but "an assurance that the FBI would not directly or indirectly disclose the cooperation of the interviewee with the investigation unless such a disclosure is determined by the FBI to be important to the success of its law enforcement objective." 956 F. 2d, at 434.

The court then addressed the Government's argument that a presumption of confidentiality arises whenever any individual or institutional source supplies information to the Bureau during a criminal investigation. As the Court of Appeals phrased it, the issue was "whether the fact that the source supplied information to the FBI in the course of a criminal investigation is alone sufficient to support an inference that the source probably had a reasonable expectation that no unnecessary disclosure of his or her cooperation would occur." *Ibid.* The court thought the question "close." *Ibid.* On one hand, the Bureau tends to investigate significant criminal matters, and the targets of those investigations are likely to resent cooperating witnesses. This is especially so where, as here, the investigation concerns a highly publicized, possibly gang-related police shooting. *Id.*, at 434, and n. 5. On the other hand, the court recognized that "there are undoubtedly many routine FBI interviews in the course of criminal investigations that are unlikely to give rise to similar apprehensions on the part of the interviewee." *Id.*, at 434.

The Court of Appeals recognized that a number of other courts had adopted the Government's position. See, *e. g.*, *Nadler* v. *United States Dept. of Justice*, 955 F. 2d 1479, 1484–1487 (CA11 1992); *Schmerler* v. *FBI*, 283 U. S. App. D. C. 349, 353, 900 F. 2d 333, 337 (1990); *Donovan* v. *FBI*, 806 F. 2d 55, 61 (CA2 1986); *Johnson* v. *United States Dept. of Justice*, 739 F. 2d 1514, 1517–1518 (CA10 1984); *Ingle* v. *Department of Justice*, 698 F. 2d 259, 269 (CA6 1983); *Miller* v. *Bell*, 661 F. 2d 623, 627 (CA7 1981) *(per curiam)*, cert. denied, 456 U. S. 960 (1982). Considering itself bound by its previous decision in *Lame* v. *United States Department of Justice*, 654 F. 2d 917 (CA3 1981), however, the Court of Appeals took a different view. It declined to rely either on the Government's proposed presumption or on the particular subject matter of the investigation. Instead, it determined that, to justify withholding information under Exemption

7(D), the Government had to provide "'detailed explanations relating to each alleged confidential source.'" 956 F. 2d, at 435 (quoting *Lame, supra,* at 928).

We granted certiorari to resolve the conflict among the Courts of Appeals over the nature of the FBI's evidentiary burden under Exemption 7(D). 506 U. S. 813 (1992).

## II

### A

Exemption 7(D) permits the Government to withhold

"records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . . , information furnished by a confidential source." § 552(b)(7)(D).

The Government bears the burden of establishing that the exemption applies. § 552(a)(4)(B).

We have described the evolution of Exemption 7(D) elsewhere. See *John Doe Agency* v. *John Doe Corp.,* 493 U. S. 146, 155–157 (1989); *FBI* v. *Abramson,* 456 U. S. 615, 621–622 (1982). When FOIA was enacted in 1966, Exemption 7 broadly protected "'investigatory files compiled for law enforcement purposes except to the extent available by law to a private party.'" *Id.,* at 621. Congress revised the statute in 1974 to provide that law enforcement records could be withheld only if the agency demonstrated one of six enumerated harms. The 1974 version of Exemption 7(D) protected

"'investigatory records compiled for law enforcement purposes [the production of which] would . . . disclose

the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, . . . confidential information furnished only by the confidential source.'" *Id.*, at 622.

Congress adopted the current version of Exemption 7(D) in 1986. The 1986 amendment expanded "records" to "records or information," replaced the word "would" with the phrase "could reasonably be expected to," deleted the word "only" from before "confidential source," and clarified that a confidential source could be a state, local, or foreign agency or a private institution. See 5 U. S. C. § 552(b)(7)(D).

Under Exemption 7(D), the question is not whether the requested *document* is of the type that the agency usually treats as confidential, but whether the particular *source* spoke with an understanding that the communication would remain confidential. According to the Conference Report on the 1974 amendment, a source is confidential within the meaning of Exemption 7(D) if the source "provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." S. Rep. No. 93–1200, at 13. In this case, the Government has not attempted to demonstrate that the FBI made explicit promises of confidentiality to particular sources. That sort of proof apparently often is not possible: The FBI does not have a policy of discussing confidentiality with every source, and when such discussions do occur, agents do not always document them. Tr. of Oral Arg. 7–8, 47–48. The precise question before us, then, is how the Government can meet its burden of showing that a source provided information on an implied assurance of confidentiality. The parties dispute two issues: the meaning of the word "confidential," and whether, absent specific evidence to the contrary, an implied assurance of confidentiality always can be inferred from the fact that a source cooperated with the FBI during a criminal investigation.

Opinion of the Court

B

Landano argues that the FBI's sources in the Snow investigation could not have had a reasonable expectation of confidentiality because the Bureau might have been obliged to disclose the sources' names or the information they provided under *Brady*, the Jencks Act, 18 U. S. C. §3500, or federal discovery rules, see Fed. Rules Crim. Proc. 16, 26.2. He also points out that some FBI witnesses invariably will be called to testify publicly at trial. Landano apparently takes the position that a source is "confidential" for purposes of Exemption 7(D) only if the source can be assured, explicitly or implicitly, that the source's cooperation with the Bureau will be disclosed to no one. We agree with the Court of Appeals that this cannot have been Congress' intent.

FOIA does not define the word "confidential." In common usage, confidentiality is not limited to complete anonymity or secrecy. A statement can be made "in confidence" even if the speaker knows the communication will be shared with limited others, as long as the speaker expects that the information will not be published indiscriminately. See Webster's Third New International Dictionary 476 (1986) (defining confidential to mean "communicated, conveyed, [or] acted on . . . in confidence: known only to a limited few: not publicly disseminated"). A promise of complete secrecy would mean that the FBI agent receiving the source's information could not share it even with other FBI personnel. See *Dow Jones & Co.* v. *Department of Justice*, 286 U. S. App. D. C. 349, 357, 917 F. 2d 571, 579 (1990) (Silberman, J., concurring in denial of rehearing en banc). Such information, of course, would be of little use to the Bureau.

We assume that Congress was aware of the Government's disclosure obligations under *Brady* and applicable procedural rules when it adopted Exemption 7(D). Congress also must have realized that some FBI witnesses would testify at trial. We need not reach the question whether a confidential source's public testimony "waives" the FBI's right to with-

hold information provided by that source. See, *e. g., Irons* v. *FBI,* 880 F. 2d 1446 (CA1 1989) (en banc). For present purposes, it suffices to note that, at the time an interview is conducted, neither the source nor the FBI agent ordinarily knows whether the communication will be disclosed in any of the aforementioned ways. Thus, an exemption so limited that it covered only sources who reasonably could expect total anonymity would be, as a practical matter, no exemption at all. Cf. *John Doe,* 493 U. S., at 152 (FOIA exemptions "are intended to have meaningful reach and application"). We therefore agree with the Court of Appeals that the word "confidential," as used in Exemption 7(D), refers to a degree of confidentiality less than total secrecy. A source should be deemed confidential if the source furnished information with the understanding that the FBI would not divulge the communication except to the extent the Bureau thought necessary for law enforcement purposes.

## C

The Government objects to the Court of Appeals' requirement that it make an individualized showing of confidentiality with respect to each source. It argues that an assurance of confidentiality is " 'inherently implicit' " whenever a source cooperates with the FBI in a criminal investigation. Brief for Petitioners 18–20 (quoting *Miller* v. *Bell,* 661 F. 2d, at 627). The Government essentially contends that *all* FBI sources should be presumed confidential; the presumption could be overcome only with specific evidence that a particular source had no interest in confidentiality.

This Court previously has upheld the use of evidentiary presumptions supported by considerations of "fairness, public policy, and probability, as well as judicial economy." *Basic Inc.* v. *Levinson,* 485 U. S. 224, 245 (1988). We also have recognized the propriety of judicially created presumptions under federal statutes that make no express provision

for their use. See, *e. g., ibid.* But we are not persuaded that the presumption for which the Government argues in this case is warranted.

Although the Government sometimes describes its approach as "categorical," see, *e. g.,* Superneau Declaration, App. 33–41, the proposed rule is not so much categorical as universal, at least with respect to FBI sources. The Government would have us presume that virtually every source is confidential: the paid informant who infiltrates an underworld organization; the eyewitness to a violent crime; the telephone company that releases phone records; the state agency that furnishes an address. The only "sources" that the Government is willing to state are not presumptively confidential (though they may be exempt from disclosure under other FOIA provisions) are newspaper clippings, wiretaps, and witnesses who speak to an undercover agent and therefore do not realize they are communicating with the FBI. Although we recognize that confidentiality often will be important to the FBI's investigative efforts, we cannot say that the Government's sweeping presumption comports with "common sense and probability." *Basic Inc., supra,* at 246.

The FBI collects information from a variety of individual and institutional sources during the course of a criminal investigation. See, *e. g.,* Superneau Declaration, App. 35–41. The Bureau's investigations also cover a wide range of criminal matters. See 28 U. S. C. § 533 (FBI authorized to investigate "crimes against the United States" and to conduct other investigations "regarding official matters under the control of the Department of Justice and the Department of State"); § 540 (FBI authorized to investigate certain felonious killings of state and local law enforcement officers). In this case, the Bureau participated in the investigation of a state crime in part because of the need for interstate "unlawful flight" warrants to apprehend certain suspects. Brief for Petitioners 2, n. 1. The types of information the Bureau

collects during an investigation also appear to be quite diverse. Although the Government emphasizes the difficulty of anticipating all the ways in which release of information ultimately may prove harmful, it does not dispute that the communications the FBI receives can range from the extremely sensitive to the routine.

The Government maintains that an assurance of confidentiality can be inferred whenever an individual source communicates with the FBI because of the risk of reprisal or other negative attention inherent in criminal investigations. See Superneau Declaration, App. 37–38. It acknowledges, however, that reprisal may not be threatened or even likely in any given case. *Id.*, at 38. It may be true that many, or even most, individual sources will expect confidentiality. But the Government offers no explanation, other than ease of administration, why that expectation always should be presumed. The justifications offered for presuming the confidentiality of all institutional sources are less persuasive. The Government "is convinced" that the willingness of other law enforcement agencies to furnish information depends on a "traditional understanding of confidentiality." *Id.*, at 40. There is no argument, however, that disclosure ordinarily would affect cooperating agencies adversely or that the agencies otherwise would be deterred from providing even the most nonsensitive information. The Government does suggest that private institutions might be subject to "possible legal action or loss of business" if their cooperation with the Bureau became publicly known. *Id.*, at 41. But the suggestion is conclusory. Given the wide variety of information that such institutions may be asked to provide, we do not think it reasonable to infer that the information is given with an implied understanding of confidentiality in all cases.

Considerations of "fairness" also counsel against the Government's rule. *Basic Inc., supra,* at 245. The Govern-

ment acknowledges that its proposed presumption, though rebuttable in theory, is in practice all but irrebuttable. Tr. of Oral Arg. 22–23. Once the FBI asserts that information was provided by a confidential source during a criminal investigation, the requester—who has no knowledge about the particular source or the information being withheld—very rarely will be in a position to offer persuasive evidence that the source in fact had no interest in confidentiality. See *Dow Jones & Co.* v. *Department of Justice*, 286 U. S. App. D. C., at 355, 917 F. 2d, at 577.

The Government contends that its presumption is supported by the phrase "could reasonably be expected to" and by our decision in *Department of Justice* v. *Reporters Comm. for Freedom of Press*, 489 U. S. 749 (1989). In *Reporters Committee* we construed Exemption 7(C), which allows the Government to withhold law enforcement records or information the production of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U. S. C. § 552(b)(7)(C). We held that certain criminal "rap sheet" information was categorically exempt from disclosure because the release of such information invariably constitutes an unwarranted invasion of privacy. 489 U. S., at 780. Our approval of a categorical approach was based in part on the phrase "could reasonably be expected to," which Congress adopted in 1986 to ease the Government's burden of invoking Exemption 7, see *id.*, at 756, n. 9, and to "replace a focus on the effect of a particular disclosure 'with a standard of reasonableness . . . based on an objective test,'" *id.*, at 778, n. 22 (quoting S. Rep. No. 98–221, p. 24 (1983)). As explained more fully in Part III, below, we agree with the Government that when certain circumstances characteristically support an inference of confidentiality, the Government similarly should be able to claim exemption under Exemption 7(D) without detailing the circumstances surrounding a particular interview. Neither the

language of Exemption 7(D) nor *Reporters Committee,* however, supports the proposition that the category of *all* FBI criminal investigative sources is exempt.

The Government relies extensively on legislative history. It is true that, when Congress debated the adoption of Exemption 7(D), several Senators recognized the importance of confidentiality to the FBI and argued that the exemption should not jeopardize the effectiveness of the Bureau's investigations. See, *e. g.,* 120 Cong. Rec. 17036, 17037 (May 30, 1974) (Sen. Thurmond) ("It is just such assurance [of confidentiality] that encourages individuals from all walks of life to furnish this agency information . . ."). But Congress did not expressly create a blanket exemption for the FBI; the language that it adopted requires every agency to establish that a confidential source furnished the information sought to be withheld under Exemption 7(D). The Government cites testimony presented to Congress prior to passage of the 1986 amendment emphasizing that the threat of public exposure under FOIA deters potential sources from cooperating with the Bureau in criminal investigations. See, *e. g.,* FBI Oversight: Hearings before the Subcommittee on Civil and Constitutional Rights of the House Committee on the Judiciary, 96th Cong., 2d Sess., pp. 97, 99–100, 106 (1980) (FBI Dir. William Webster); see also Freedom of Information Act: Hearings before the Subcommittee on the Constitution of the Senate Committee on the Judiciary, 97th Cong., 1st Sess., pp. 990–1040 (1981). But none of the changes made to Exemption 7(D) in 1986 squarely addressed the question presented here. In short, the Government offers no persuasive evidence that Congress intended for the Bureau to be able to satisfy its burden in every instance simply by asserting that a source communicated with the Bureau during the course of a criminal investigation. Had Congress meant to create such a rule, it could have done so much more clearly.

## III

Although we have determined that it is unreasonable to infer that all FBI criminal investigative sources are confidential, we expect that the Government often can point to more narrowly defined circumstances that will support the inference. For example, as the courts below recognized, and respondent concedes, see Brief for Respondent 46, it is reasonable to infer that paid informants normally expect their cooperation with the FBI to be kept confidential. The nature of the informant's ongoing relationship with the Bureau, and the fact that the Bureau typically communicates with informants "only at locations and under conditions which assure the contact will not be noticed," Superneau Declaration, App. 36, justify the inference.

There may well be other generic circumstances in which an implied assurance of confidentiality fairly can be inferred. The Court of Appeals suggested that the fact that the investigation in this case concerned the potentially gang-related shooting of a police officer was probative. We agree that the character of the crime at issue may be relevant to determining whether a source cooperated with the FBI with an implied assurance of confidentiality. So too may the source's relation to the crime. Most people would think that witnesses to a gang-related murder likely would be unwilling to speak to the Bureau except on the condition of confidentiality.

The Court of Appeals below declined to rely on such circumstances. But several other Court of Appeals decisions (including some of those the Government cites favorably) have justified nondisclosure under Exemption 7(D) by examining factors such as the nature of the crime and the source's relation to it. See, *e. g., Keys* v. *United States Dept. of Justice,* 265 U. S. App. D. C. 189, 197–198, 830 F. 2d 337, 345–346 (1987) (individuals who provided information about subject's possible Communist sympathies, criminal activity, and murder by foreign operatives would have worried about re-

taliation); *Donovan* v. *FBI*, 806 F. 2d, at 60–61 (on facts of this case, in which FBI investigated murder of American churchwomen in El Salvador, "it cannot be doubted that the FBI's investigation would have been severely curtailed, and, perhaps, rendered ineffective if its confidential sources feared disclosure"); *Parton* v. *United States Dept. of Justice,* 727 F. 2d 774, 776–777 (CA8 1984) (prison officials who provided information about alleged attack on inmate faced "high probability of reprisal"); *Miller* v. *Bell,* 661 F. 2d, at 628 (individuals who provided information about self-proclaimed litigious subject who sought to enlist them in his "anti-government crusade" faced "strong potential for harassment"); *Nix* v. *United States,* 572 F. 2d 998, 1003–1004 (CA4 1978) (risk of reprisal faced by guards and prison inmates who informed on guards who allegedly beat another inmate supported finding of implied assurance of confidentiality).

We think this more particularized approach is consistent with Congress' intent to provide "'"workable" rules'" of FOIA disclosure. *Reporters Committee,* 489 U. S., at 779 (quoting *FTC* v. *Grolier Inc.,* 462 U. S. 19, 27 (1983)); see also *EPA* v. *Mink,* 410 U. S. 73, 80 (1973). The Government does not deny that, when a document containing confidential source information is requested, it generally will be possible to establish factors such as the nature of the crime that was investigated and the source's relation to it. Armed with this information, the requester will have a more realistic opportunity to develop an argument that the circumstances do not support an inference of confidentiality. To the extent that the Government's proof may compromise legitimate interests, of course, the Government still can attempt to meet its burden with *in camera* affidavits.

## IV

The Government has argued forcefully that its ability to maintain the confidentiality of all of its sources is vital to effective law enforcement. A prophylactic rule protecting

the identities of all FBI criminal investigative sources undoubtedly would serve the Government's objectives and would be simple for the Bureau and the courts to administer. But we are not free to engraft that policy choice onto the statute that Congress passed. For the reasons we have discussed, and consistent with our obligation to construe FOIA exemptions narrowly in favor of disclosure, see, *e. g.*, *John Doe*, 493 U. S., at 152; *Department of Air Force* v. *Rose*, 425 U. S. 352, 361–362 (1976), we hold that the Government is not entitled to a presumption that a source is confidential within the meaning of Exemption 7(D) whenever the source provides information to the FBI in the course of a criminal investigation.

More narrowly defined circumstances, however, can provide a basis for inferring confidentiality. For example, when circumstances such as the nature of the crime investigated and the witness' relation to it support an inference of confidentiality, the Government is entitled to a presumption. In this case, the Court of Appeals incorrectly concluded that it lacked discretion to rely on such circumstances. Accordingly, we vacate the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*