Jeffrey STEINBERG, Plaintiff,

v.

UNITED STATES DEPARTMENT
OF JUSTICE, Defendant.

No. Civ.A. 93–2409–LFO.

United States District Court,
District of Columbia.

April 28, 1998.

Jeffrey Steinberg, Leesburg, VA, for plaintiff.

Benjamin R. Barnett, Assist. U.S. Attorney, Washington, DC, for defendant.

## MEMORANDUM

OBERDORFER, District Judge.

This case, one of three brought by plaintiff Jeffrey Steinberg against agencies of the federal government, involves a petition for numerous documents under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1994). *See also Steinberg v. United States Dep't of Justice,* Civ. No. 91–2740; *Steinberg v. United States Dep't of Treasury,* Civ. No. 93–2348. In several requests submitted to the Headquarters of the Federal Bureau of Investigations (FBIHQ), eight FBI field offices, and two Legal Attaches, Steinberg sought documents pertaining to himself and Dan Bar Farm, located in Pulaski County, Virginia. When these administrative attempts failed, Steinberg filed the present suit against defendant U.S. Department of Justice on November 23, 1993.

Currently pending are Steinberg's Second Cross–Motion for Partial Summary Judgment [docket no. 122; filed 2/26/97], Steinberg's Second Motion for Leave to Take Discovery Pursuant to F.R.C.P. Rule 56(f) [123; 2/26/97], the Justice Department's Renewed Motion for Summary Judgment [170; 10/24/97], Steinberg's Fourth Cross–Motion for Summary Judgment [174; 11/7/97], and Steinberg's Motion to Compel a Supplemental *Vaughn* Index [173; 11/7/97]. For the reasons stated below, an accompanying order will deny summary judgment for Steinberg and grant summary judgment in part and deny it in part for the Justice Department.

### I.

Steinberg's complaint states five separate FOIA counts against the Justice Department. On October 31, 1995, a Memorandum and Order granted in part the Department's Motion for Partial Summary Judgment. That motion addressed portions of Count 2 (pertaining to requests to the Charlotte and New York field offices); portions of Count 4 (pertaining to a request to FBI Headquarters concerning the *Foreign Counterintelligence Manual*); and the entirety of Count 5 (which pertains to a request to the Richmond field office). On April 25, 1997, after additional filings from the Department, its summary judgment motion was granted in full. On June 18, 1997, Steinberg's motion to amend that ruling was denied.

On July 14, 1997, a Memorandum and Order considered dispositive motions filed by both parties. These motions addressed Count 1 (pertaining to a request to re-exam-

ine a file in FBI Headquarters); the remaining portion of Count 2 (pertaining to requests to field offices in Atlanta, Baltimore, Dallas, San Antonio, and Washington, D.C., and Legal Attaches in Bogota and Rome); and Count 3 (pertaining to a request to FBI Headquarters for a duplicate of a Washington field office file). The Justice Department argued that it had complied fully with FOIA; Steinberg challenged both the sufficiency of the Department's searches for documents and the Department's claims that certain material was statutorily exempt from disclosure. The Memorandum and Order accepted the Department's contention that its searches were adequate. Yet, it also directed the Department to submit additional filings to support its assertion of FOIA exemptions 1, 7(C), and 7(D). *See* 5 U.S.C. § 552(b)(1), (b)(7)(C), (b)(7)(D). In response, the Justice Department filed a supplemental *Vaughn* index on October 24, 1997.

## II.

Steinberg's Second Cross–Motion for Partial Summary Judgment and his Second Motion for Leave to Take Discovery Pursuant to F.R.C.P. Rule 56(f) concern certain documents that the Justice Department referred to other government agencies for classification review. On January 24, 1997, the Justice Department filed original *Vaughn* declarations from Lee Strickland of the CIA and Gregorie W. Bujac of the State Department to support the nondisclosure of material referred to those agencies. (The Justice Department also filed a declaration from an official of the Defense Intelligence Agency, which concerns nondisclosures that Steinberg does not contest.) Since these declarations were filed well after the completion of briefing for summary judgment on Counts 1 through 3, the Court's July 14, 1997 Memo-

randum and Order did not address Steinberg's concerns with them.

## A.

Steinberg's first objection, concerning a three page teletype, can be dismissed summarily. *See* 6th Steinberg Decl., Ex. 1 (serial 105–347013–1 in FBIHQ file, captioned "Andrei Sakharov; FCI–R (A); OO: Bureau," released on 2/22/95); *id.,* Ex. 2 (same, released on 4/10/95). The document was referred to the CIA, which had no objections to full disclosure. *See* Strickland Aff., ¶ 35, at 20. Steinberg speculates that another, unidentified agency classified portions of the text pursuant to Exemption 1. Since Federal Civil Procedure Rule 56(e) requires that affidavits in support of summary judgment "be made on personal knowledge," Steinberg argues that the Justice Department must supply an affidavit from this unnamed agency to justify redactions from the text.

Steinberg's speculation is unfounded. The supplemental *Vaughn* index—since filed on October 24, 1997—offers the Justice Department's first-hand explanation of Exemption 1 redactions in this document. *See* Davis Decl., ¶ 6, at 5; *id.,* at 121. Moreover, Special Agent Robert Moran of the FBI has testified that the Justice Department did not refer documents to agencies other than the CIA, the Defense Intelligence Agency, and State Department. *See* 4th Moran Decl., ¶ 49, at 14. Consequently, there is no support for Steinberg's belief that "another agency, not the FBI, made the classification determination" in this document. Mem. Opp. Def.'s 2d Mot. Summ. J. & Supp. Pl.'s 2d Cross–Mot. Partial Summ. J., at 4.[1]

## B.

Next, Steinberg challenges the sufficiency of the Strickland Declaration, which indexes twelve documents referred to the CIA.[2] He

---

**1.** To argue that an unidentified agency considered his FOIA request, Steinberg relies solely on a handwritten notation on the document's first page, which reads, "Remain classified [illegible] agency letter 1–4–95." Contrary to his speculation, this notation is plainly the result of the Executive branch's uniform procedure for classifying national security documents. *See* Exec. Order No. 12356, § 1.5(a), 47 Fed.Reg. 14,874 (1982). In light of the redaction that immediate-

ly follows it, the notation itself is now considered part of the text.

**2.** The CIA did not recommend any redactions from one of these documents, numbered 105–347013–1. *See* Strickland Decl., ¶ 35, at 20. Accordingly, the Order below addresses the eleven remaining documents.

argues that the declaration is excessively vague, relying on boilerplate explanations of FOIA exemptions rather than specific descriptions of material that was redacted. He also underscores several instances where the declaration inaccurately describes the documents, principally by misstating the number of pages in each.

To a large extent, his complaints are unfounded. The Strickland Declaration indexes only the twelve documents referred to the CIA, and discusses only the redactions within them that are identified in the Justice Department's May 4, 1995 *Vaughn* index with the code "b1–OA"—i.e., withheld pursuant to FOIA Exemption 1, at the recommendation of another agency. Contrary to Steinberg's claim, the justifications offered for these redactions are not boilerplate. Section two of the declaration correlates the "b1–OA" redactions from each document with specific rationales, explained in great depth in section one of the declaration. Given its subject-matter, the 23–page declaration is quite detailed. To the extent that the declaration contains some errors, moreover, Steinberg has not demonstrated how these factual discrepancies are material, and thereby demand additional filings from the government or defeat the Department's motion for summary judgment.

 In one respect, however, the Strickland Declaration is deficient. According to our Court of Appeals, "when an agency seeks to withhold information, it must provide 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" *King v. United States Dep't of Justice,* 830 F.2d 210, 219 (D.C.Cir.1987) (quoting *Mead Data Central v. United States Dep't of Air Force,* 566 F.2d 242, 251 (D.C.Cir.1977)). Steinberg is correct that section two of the Strickland Declaration fails to correlate every redaction *within* each document with the various justifications collectively offered for the redactions from each document. For instance, the declaration offers five separate justifications for the "b1–OA" redactions from a nineteen-page teletype known as FBI no. 199–12167–

17, but fails to explain which of the five justifications apply to each redaction.

Since the remedy for this deficiency is to order a supplemental declaration from Strickland that cures it—and, accordingly, to deny the Justice Department's own renewed motion for summary judgment in part—Steinberg's motions for partial summary judgment and for discovery will be denied.

### C.

The remainder of Steinberg's motion for partial summary judgment is premised on conjecture about the content of undisclosed text. Steinberg speculates that the CIA and the State Department are violating FOIA by withholding information that the agencies have previously disclosed in public releases. He also asserts that the agencies are wrongfully withholding other information—such as the identities of government informants and the existence of foreign stations—that has long been public knowledge. If he is correct, he argues, he is entitled to a summary judgment order dictating the release of this information.

Steinberg rightfully observes that he can hardly be expected to know the content of text that the government is withholding from him. On the other hand, he certainly cannot defeat the Justice Department's renewed motion for summary judgment on Counts 1 through 3 with pure conjecture about the possible content of withheld information, raising "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Otherwise, any FOIA litigant could stave off summary judgment for the government simply by demanding that it affirmatively disavow it is not withholding specific information in the public domain. To survive summary judgment, Steinberg's initial burden is to underscore "specific information in the public domain that appears to duplicate that being withheld." *Afshar v. Dept. of State,* 702 F.2d 1125, 1130 (D.C.Cir.1983). It is for the courts to assess how apparent the alleged duplication is.

Steinberg fails to meet the threshold for opposing summary judgment. While he repeatedly argues that the context of certain redacted material suggests its non-privileged content, each of his assertions is unpersuasive and unsupported. For instance, he speculates that the CIA has withheld public information about Colonel Mitchell Werbell and his counter-terrorism training school. As evidence, Steinberg points only to the redacted sentence in question, which reads, "The source mentioned by New York Division who provided information regarding subject and Mitchell Werbell is [redacted]." FBI no. 199–12167–25, at 12. According to the Strickland Declaration, the redaction contains the names of CIA sources and employees, information about intelligence methods, the location of unacknowledged domestic installations, and/or internal organizational data. *See* Strickland Decl., ¶ 35, at 22. There is no evidence to suggest that any of the redacted material is in the public domain, even if it does concern Werbell and his counter-terrorism school.

In short, Steinberg fails to offer any credible information in the public domain that "appears" to duplicate material being withheld. Accordingly, his motions for partial summary judgment and for additional discovery will be denied. With the exception of eleven of the twelve documents referred by the Justice Department to the CIA, summary judgment will be granted in favor of the Department on the referral documents.

### III.

The remaining pending motions concern the adequacy of the Justice Department's October 24, 1997 *Vaughn* index. As noted, the Department filed the index in response to the July 14, 1997 Memorandum and Order, which denied in part the Department's summary judgment motion on Counts 1 through 3.[3] Specifically, the Memorandum and Order required additional information about redactions made under Exemption 1 and some redactions made under Exemptions 7(C) and

7(D). The Department has since renewed its motion for summary judgment. In response, Steinberg has filed another cross-motion for partial summary judgment and a motion to compel another supplemental *Vaughn* index.

### A.

The July 14, 1997 Memorandum and Order held that the Justice Department's coded *Vaughn* index for Exemption 1 lacked sufficient detail. It is undisputed that the Department's new *Vaughn* index solves this problem. Instead, Steinberg raises several new challenges to the Department's justifications for Exemption 1 redactions.

### 1.

First, he takes issue with redactions of material that the Department fears would "reveal the scope and depth of the FBI's investigation of this particular intelligence matter." *E.g.*, 2d Davis Decl., App. A, at 7. According to the Justice Department, disclosure would threaten national security by revealing "the limitations of the FBI's efforts in a particular investigation or the amount of resource or efforts that the FBI is willing to expend on this particular matter." *Id.* Given such knowledge, potential FBI targets who engage in illegal but low-priority activity, for instance, might act with greater impunity. Steinberg contends that the material should be released because he is no longer a target of investigation and therefore poses no security risk. He underscores the Department's concession that its worst-case scenario "may not occur in the narrow context of this case...." *Id.* at 8.

Steinberg's position is unpersuasive. The Department has ample reason to fear that public disclosure of the scope and depth of particular investigations, which reveal its own law enforcement priorities, jeopardizes national security. While Steinberg himself may not pose a risk, the Department can hardly control the dissemination of confidential information once it reaches the public

---

3. The Department's latest *Vaughn* index also addresses the portion of Count 4 that remains unresolved, Steinberg's request for a document known as the Terrorist Photographic Album. Because Steinberg does not contest this portion

of the index, *see* Pl.'s Mem. of P. & A. in. to Def.'s Renewed Mot. Summ. J. et al., at 1, summary judgment will be entered for the Justice Department on Count 4.

domain. Steinberg's view—that anyone who is not a current target of investigation is statutorily entitled to knowledge of the FBI's investigatory priorities—would make it impossible for the FBI to ensure the confidentiality and thereby the effectiveness of its law enforcement strategies.

### 2.

Steinberg challenges redactions of information about certain foreign governments, including their identities, relationships with the FBI, and material they provided the FBI. In most instances, the Justice Department index justifies the redactions pursuant to an "explicit understanding" with the foreign government that the material would remain classified. *See, e.g.,* 2d Davis Decl., App. A, at 42. In a few cases, the Department states that a confidentiality agreement is "expressed or implied." *Id.,* at 110, 111, 219. Steinberg argues that FOIA demands greater specificity, about the manner in which foreign governments and the FBI reached and expressed such understandings. He contends that the Justice Department's index must state if, for example, a document contains a guarantee of confidentiality on its face, or is subject to a confidentiality treaty. According to Steinberg, Exemption 1 requires a comparable level of specificity about confidentiality agreements as Exemption 7(D), which protects the identity of a confidential source. *See generally United States Dept. of Justice v. Landano,* 508 U.S. 165, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993) (rejecting Exemption 7(D) redactions premised on assumption that all sources supplying information to the FBI in the course of criminal investigation are confidential).

Exemption 1 requires the government to demonstrate that redactions are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order...." 5 U.S.C. § 552(b)(1). Here, the Justice Department contends that the release of confidential information from or about a foreign govern-

ment would jeopardize "foreign relations or foreign activities of the United States." Exec. Order No. 12356, § 1.3(a)(5), 47 Fed. Reg. 14,874 (1982) [4]; *see* Davis Decl., ¶ 15, at 9–10. The governing Executive Order expressly provides that the "[u]nauthorized disclosure of foreign government information, the identity of a confidential foreign source, or intelligence sources or methods is presumed to cause damage to national security." Exec. Order No. 12356, § 1.3(c).

■ Steinberg's position has some force. Subpart B of Exemption 1 plainly contemplates that the courts will play some role in determining whether a national security classification by the Executive branch is proper. To ensure meaningful judicial review, the government cannot rely on boilerplate or indiscriminate statements that information is held in confidence. For this reason, the few occasions where the Justice Department has redacted material pursuant to an "expressed or implied" confidentiality agreement fail to discharge the government's obligations under FOIA. If an assurance of confidentiality to a foreign country or source is expressed, then the Department's *Vaughn* index should so state. If not, the Department must disclose the circumstances from which it deduces, and from which the court might as well, that the information was shared in confidence. Just as all information provided to the FBI during a criminal investigation is not necessarily confidential, *see Landano,* 508 U.S. at 174–78, 113 S.Ct. 2014, all information from, for, or about foreign governments is not necessarily either.

■ On the other hand, the Justice Department's remaining redactions, made pursuant to 'explicit understandings' that disclosures would remain confidential, satisfy the criteria of Exemption 1 and the governing Executive Order. Unlike an implied promise, an explicit assurance leaves no room for reasonable interpretation as to its existence. Special Agent Sherry Davis has examined and approved the Department's redactions, personally attesting to such 'explicit under-

---

4. This Executive Order has since been superceded by Exec. Order 12958, 60 Fed.Reg. 19,825 (1995), but was in force at the time the Justice Department processed Steinberg's documents. *See* 2d Davis Decl., ¶ 4, at 2.

standings.' *See* 2d Davis Decl., ¶ 5, at 3; *see also* Davis Decl., ¶ 6, at 5 ("My findings are based on my personal examination of the classified information at issue in this case, as well as information provided to me in my position as a Supervisory Special Agent of the FBI responsible for the review of these documents."). Steinberg does not question these representations. Instead, Steinberg relies on *Landano,* which held only that the government must detail the nature of its relationship with a source when a promise of confidentiality is *not* explicit. *See* 508 U.S. at 172, 113 S.Ct. 2014 ("In this case, the Government has not attempted to demonstrate that the FBI made explicit promises of confidentiality to particular sources."). Under these circumstances, and especially given the traditional deference afforded the Executive branch in the realm of foreign relations, Steinberg has no right to demand detailed information about the particular form that each explicit assurance of confidentiality assumes.

### 3.

Steinberg's remaining objection to the Exemption 1 redactions is without merit. The Justice Department has apparently withheld one of the addressees from a three-page FBI teletype to the CIA, the DIA, and the State Department, dated June 14, 1984. *See* FBI no. 105–347013–1. According to the supplemental *Vaughn* index, "[t]he withheld information identifies, by name, an intelligence source that is currently used by the FBI to provide information on specific individuals and organizations of national security interest." 2d Davis Decl., App. A, at 121. Without apparent regard to this explanation, Steinberg speculates that the undisclosed addressee is an agency of the American government, or a component thereof. Yet as before, *see infra* Part II.C, his pure conjecture about the possible content of redacted material—when the government has otherwise provided a fully satisfactory justification for nondisclosure—does not survive summary judgment.

Accordingly, with the exception of three redactions made pursuant to an "expressed or implied" promise of confidentiality to a foreign source or government, summary judgment will be entered in favor of the Justice Department on the Exemption 1 redactions. With regard to these three redactions—in documents numbered 199–12167–59, 119–12167–60, and Rome 199–327–2—Steinberg's motion to compel a supplemental *Vaughn* index will be granted.

### B.

The July 14, 1997 Memorandum and Order questioned the Justice Department's broad invocation of Exemption 7(C), which privileges records compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *See* 5 U.S.C. § 552(b)(7)(C). Specifically, the Memorandum and Order held that the Department could only rely on Exemption 7(C) to conceal the *identities* of third-party informants, third-parties of investigative interest, and third-parties otherwise mentioned in the FBI files. *See* Mem, 7/14/97, at 8–10. In considerable detail, the Department's supplemental *Vaughn* index now purports only to invoke Exemption 7(C) to "withhold[ ] the names, personal information and other information which would identify third parties connected with this investigation. . . ." Olivarri Decl., ¶ 6, at 2. Steinberg disputes this claim, challenging the types of information that would identify third-parties.

The position of neither party is persuasive. Steinberg contends that Exemption 7(C) only privileges information that uniquely identifies a third-party to a criminal investigation—such as a name, address, or social security number. He argues, "Privacy is only invaded upon 100% certain identification of the person, identification provided by his or name or other 'unique identifiers'. . . ." P's Mem. P. & A. in Opp. Def.'s Renewed Mot. Summ. J. et al., at 12. This strict reading of Exemption 7(C) is without any legal authority. The disclosure that an individual is a government informant, whether referred to by name, rank, and serial number or by nickname or other characteristic readily identifiable to a subset of the general public, impinges upon his or her privacy. For instance, the July 14, 1997 Memorandum noted that an informant's alias can be withheld

under Exemption 7(C), *see* Mem. of 7/14/97, at 9, although aliases are often not 'unique identifiers.'

The Justice Department, on the other hand, continues to withhold substantial segments of material—several consecutive paragraphs or pages—based on assurances that the entirety of each redaction would identify a third-party with a privacy interest. Under FOIA, the government has a responsibility to disclose "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt. . . ." 5 U.S.C. § 552(b). The Court has already expressed its skepticism that the Justice Department has met its burden. *See* Mem. of 7/14/97, at 10 ("Given the length and context of these redactions, it seems difficult to endorse the FBI's assertion that Exemption 7(C) applies to their entirety."). This skepticism persists in light of the Department's supplemental *Vaughn* index.

For example, it is far from evident how the specific location of an FBI interview with a government informant or the names of other individuals present (whose privacy interests are not at issue) would suggest the identity of the informant. *See, e.g.,* Olivarri Decl., Ex. B., file no. HQ199–1257–35. Or how "observations noted by the Special Agent . . . as to the type of personality of the person interviewed" and "how many times the individual was interviewed" would do the same. *Id.,* file no. SA 199–1182–4. In short, several of the government's specific explanations for withholding broad swaths of information are unconvincing on their face. In the interests of efficiency, the Justice Department will be ordered to submit the following documents for an *in camera* review, along with whatever additional justifications it cares to offer for the Exemption 7(C) redactions: HQ 199–12167–16; HQ 199–12167–30, HQ 199–12167–35; HQ 199–12167–42; SA 199–1182–4; SA 199–1182–10; and WFO 199–4177–1A1.

Excluded from this list are several documents with substantial redactions that the government has justified to the satisfaction of the Court. With regard to certain documents that describe the contents of an informant's interview with the government, the Justice Department attests that the withheld material is "singular in nature and release of further details would identify the individuals whose privacy is being protected." *See, e.g.,* Olivarri Decl., Ex. B, file no. SA 199–1182–5; *id.,* file no. SA199–1182–11; *id.,* file no. SA199–1182–13; *id.,* file no. SA 1182–14; *id.,* file no. HQ105–347013–2X; *id.,* file no. HQ105–347013–3. It is understandable how the public disclosure of highly confidential details about terrorist activities might be traced to particular individuals.

■ Steinberg's remaining objections may be dismissed summarily. Simply because the government does not suspect that third-parties will suffer specific acts of reprisal if their identities as informants are made public does not necessarily diminish their privacy interest. *See* 4th Moran Decl., ¶ 84, at 29. Moreover, it is too late in this litigation for Steinberg to question the sufficiency of the Justice Department's previous *Vaughn* index. Steinberg's demand for any information that identifies Gary Howard, Frederick Lewis, and Rod Tucker as government informants is no longer open for debate. Mem. of 7/14/97, at 12 ("[T]he FBI's assertion of Exemption 7(C) with regard to Lewis, Howard, and Tucker will be upheld."). Regardless, his argument is once again premised on unsupported speculation about the possible content of redacted material.

Accordingly, with the exception of the seven documents that are subject to an *in camera* inspection, summary judgment will be entered in favor of the Justice Department on the Exemption 7(C) redactions.

### C.

■ The July 14, 1997 Memorandum and Order required the Justice Department to submit additional filings in support of Exemption 7(D), which privileges information compiled for law enforcement purposes that "could reasonably be expected to disclose the identity of a confidential source . . . [or] information furnished by a confidential source. . . ." 5 U.S.C. § 552(b)(7)(D). Steinberg does not challenge redactions of information provided by government sources when the face of the document indicates that the government provided an express assur-

ance of confidentiality. Nor does he challenge redactions made pursuant to. express assurances of confidentiality given to state or local law enforcement agencies, in light of the latest *Vaughn* index. *See* Olivarri Decl., ¶¶ 20–24, at 8–10. Yet Steinberg continues to question redactions from documents connected to the government's investigation of his activities during the mid 1980s for involvement in international terrorism. These documents contain no indication that the government's sources were given express assurances of confidentiality. *See id.,* ¶ 14, at 6.

The Justice Department's explanation in its supplemental *Vaughn* index of its dealings with two principal sources supports the inference that these sources were confidential. In *United States Department of Justice v. Landano,* 508 U.S. 165, 179, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993), the Supreme Court held that the government can invoke Exemption 7(D) in certain "narrowly defined circumstances" from which it is reasonable to deduce that a source was acting in confidence. Here, the Justice Department has explained that one source refused a direct interview with the FBI, and was only willing to speak through an intermediary connected to the Senate Judiciary Committee. *See* Olivarri Decl., ¶¶ 15–16, at 6–7. The Department determined that a second source, through the Alexandria Field Office, was the same individual. *See id.,* ¶ 18, at 7. The Court agrees with the Department that "the source's reluctance and final refusal to talk with the FBI [is] a clear sign that the source wished that his identity remained concealed." *Id.,* ¶ 17, at 7.

Steinberg speculates about possible reasons why this source did not want to meet directly with the FBI other than to conceal his or her identity. Under *Landano,* however, the government need not conclusively prove that its source would only have cooperated under a guarantee of confidentiality. Rather, it must articulate the "generic circumstances in which an implied assurance of confidentiality fairly can be inferred." *Landano,* 508 U.S. at 179, 113 S.Ct. 2014. In *Landano,* the Court held that a relationship with an informant in which the government communicates " 'only at locations and under conditions which assure the contact will not be noticed' " justifies such an inference. *Id.* Likewise, the Justice Department's dealings with its sources here, as described in the Olivarri Declaration, establish a confidential relationship under Exemption 7(D).

Accordingly, summary judgment will be entered in favor of the Justice Department on the Exemption 7(D) redactions.

## IV.

With this ruling, only a few documents remain in dispute. Given that fact, and the substantial duration of this litigation thus far, the accompanying order sets an expedited schedule for (hopefully) completing this lawsuit by the end of the summer.

For the reasons stated in the accompanying memorandum, it is this 28th day of April 1998 hereby

ORDERED: that plaintiff's Second Cross–Motion for Partial Summary Judgment [122] is DENIED; and it is further

ORDERED: that plaintiff's Second Motion for Leave to Take Discovery Pursuant to F.R.C.P. Rule 56(f) [123] is DENIED; and it is further

ORDERED: that on or before *June 1, 1998* defendant shall submit a declaration from the CIA identifying which justifications offered in the Strickland Declaration specifically correlate to each Exemption 1 redaction within each of the following eleven documents referred to the CIA: 199–90–1; 199–90–6; 199–90–8; 199–12167–4; 199–12167–6; 199–12167–10; 199–12167–12; 199–12167–17; 199–12167–23; 199–12167–25; and 199–12167–29; and it is further

ORDERED: that defendant's ⋅ Renewed Motion for Summary Judgment [170] is GRANTED IN PART AND DENIED IN PART; and it is further

ORDERED: that, with the exception of the eleven documents referred to the CIA, summary judgment is GRANTED for defendant with respect to those documents referred to other agencies for classification review; and it is further

ORDERED: that summary judgment is GRANTED for defendant with respect to Exemption 7(D) redactions; and it is further

ORDERED: that on or before *June 1, 1998* defendant shall submit the following seven documents for an *in camera* inspection of material withheld pursuant to Exemption 7(C), along with whatever additional justifications it cares to offer: HQ 199–12167–16; HQ 199–12167–30; HQ 199–12167–35; HQ 199–12167–42; SA 199–1182–4; SA 199–1182–10; and WFO 199–4177–1A1; and it is further

ORDERED: that a status conference to review these documents under seal is scheduled for *Monday, June 1, 1998 at 2:00 pm in Courtroom 3*; and it is further

ORDERED: that, with the exception of the seven documents subject to an *in camera* inspection, summary judgment is GRANTED for defendant with respect to Exemption 7(C) redactions; and it is further

ORDERED: that plaintiff's Motion to Compel a Supplemental *Vaughn* Index [173] is GRANTED IN PART AND DENIED IN PART; and it is further

ORDERED: that on or before *June 1, 1998* defendant shall submit a supplemental *Vaughn* index for the Exemption 1 redactions in the three documents numbered 199–12167–59, 119–12167–60, and Rome 199–327–2, explaining whether, and if so, how (1) the withheld information is privileged pursuant to an *express* understanding of confidentiality with a foreign government; (2) the withheld information is privileged pursuant to an *implied* understanding of confidentiality with a foreign government, which may be reasonably inferred from the circumstances in which the information was received; or (3) the information in not privileged and is disclosed to plaintiff; and it is further

ORDERED: that, with the exception of the three documents containing redactions pursuant to an "expressed or implied" promise of confidentiality to a foreign source or government, summary judgment is GRANTED for defendant with respect to Exemption 1 redactions; and it is further

ORDERED: that plaintiff's Fourth Cross–Motion for Summary Judgment [174] is DENIED; and it is further

ORDERED: that on or before *June 15, 1998* the parties may renew their motions for summary judgment.