**Jacquelyn HALL, Plaintiff,**

v.

**U.S. DEPARTMENT OF JUSTICE, Defendant.**

**No. CIV. A. 96–2306(JR).**

United States District Court, District of Columbia.

Sept. 29, 1998.

James Hiram Lesar, Washington, DC, for Plaintiff.

Suzanne Claire Nyland, Keith V. Morgan, U.S. Attorney's Office, Washington, DC, for Defendant.

### *MEMORANDUM*

ROBERTSON, District Judge.

Plaintiff in this Freedom of Information Act case is a history professor in search of FBI documents pertaining to Dorothy Wolff Douglas, Grace Lumpkin, and Katherine Lumpkin—all intellectuals in the 1940's and 1950's who were apparently investigated by the FBI for their supposed Communist Party connections. The FBI finished processing plaintiff's various requests in March 1997 and released 1,560 of 1,793 responsive pages they had found, with redactions. This FOIA case ensued. Pursuant to an agreed order issued in May 1997, plaintiff selected 45 of the released documents as a sample and the FBI prepared a *Vaughn* index with respect to the

sample selection. In this process, the FBI released large portions of some of the documents it had previously withheld. (The FBI has undertaken to reprocess all the documents to ensure consistent application of the standards it applied to the 45–document sample.) The remaining dispute concerns the FBI's claim of authority to redact some documents and withhold others pursuant to FOIA Exemptions 1, 2, 7(c), and 7(d).[1] Both sides have moved for summary judgment. Both motions will be denied. The FBI will have an opportunity to augment its showing that the documents in question were gathered for law enforcement purposes and that they relate to confidential sources, and to show that persons whose privacy may be at stake are in fact still alive.

### *Analysis*

*Exemption 1*

FOIA Exemption 1 relates to documents that have been classified pursuant to an executive order. 5 U.S.C. § 552(b)(1). There is no question that the documents as to which the FBI invokes the exemption are classified. The question is whether, pursuant to Exec. Order No. 12,958, 3 C.F.R. 333 (1995), *reprinted in* 50 U.S.C.A. § 435 at 103–114 (1998), they should have been declassified. The Executive Order provides that, "within five years from the date of this order, all classified information contained in records that (1) are more than 25 years old, and (2) have been determined to have permanent historical value ... shall be automatically declassified whether or not the records have been reviewed." Exec. Order No. 12,958, 3 C.F.R. (1995) at 343. An agency head may exempt documents from automatic declassification, *id.* at 343–44, but plaintiff asserts that the Attorney General failed to follow the

appropriate exemption procedure. Having failed to exempt the documents in question, plaintiff argues, the FBI may not now rely on Exemption 1 to shield them from disclosure.

■ The FBI was not and is not required to take steps to exempt the documents from automatic declassification. It has until the year 2000 to make the necessary determinations. This court has no warrant to require earlier action. The invocation of Exemption 1 was proper.

*Exemption 7(D)*

Exemption 7(D) protects information gathered for law enforcement purposes that "could reasonably be expected to disclose the identity of a confidential source ... and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D).

■ A threshold question presented by a claim made under this exemption is whether the documents were gathered for law enforcement purposes. Plaintiff claims that they were not, and that instead the documents were gathered in the course of a political witch hunt conducted by J. Edgar Hoover. The Third Circuit has held that similar documents—records about the Workers Alliance of America, which was investigated in the 1930s for connections to the Communist Party—could not properly be considered to have been collected for law enforcement purposes where the FBI in its *Vaughn* submission explained the extant law enforcement purpose only by bare citation to overly broad

---

1. The FBI also withheld a *de minimis* amount of material pursuant to a stipulation with the National Lawyers Guild in 1989 which appears to have settled a lawsuit brought by the Guild in the Southern District of New York. *See* Def. Ex. B. Under this agreement, all "FBI files on the Guild" are to remain in the custody of the Deputy Assistant Director, Legal Counsel Division of the FBI and shall not be released until the year 2025. Plaintiff, without citing any cases, claims generally that this broad stipulation cannot operate to extinguish her rights under FOIA. Plaintiff

may well be correct, *cf. Burka v. U.S. Department of Health and Human Services,* 87 F.3d 508, 516–517 & n. 10 (D.C.Cir.1996) (not all material subject to a protective order is subject to a FOIA exemption, because the considerations relevant to entry of a protective order are not coextensive with FOIA), but this court will not address the Guild stipulation before the FBI reprocesses the documents at issue.

The National Security Agency also withheld documents requested by plaintiff, but plaintiff did not challenge this in her motions.

criminal statutes. *Davin v. U.S. Department of Justice*, 60 F.3d 1043, 1056 (3rd Cir.1995) (citing *Pratt v. Webster*, 673 F.2d 408 (D.C.Cir.1982) (two-prong test for determining law enforcement purpose: government identification of an individual target and his connection to a potential violation of law or security risk and government demonstration that the connection is based on a "colorable claim" of rationality)). The *Davin* court found that the government had not met the second prong of the D.C. Circuit test because the *Vaughn* index "provide[d] [plaintiff] with no information whatsoever about the initiation, breadth or results of the investigations. The paucity of information about these lengthy investigations casts doubt on the government's assertion that withheld documents pertain to law enforcement investigations, and has made impossible [plaintiff's] challenge to the government's claim." *Davin*, 60 F.3d at 1057. The *Vaughn* index in this case, like that in *Davin*, is insufficient to establish the law enforcement purposes of the withheld documents.

■ The next issue under this exemption is whether the sources were in fact confidential—that is, whether they received either an express or implied promise of confidentiality. *See U.S. Department of Justice v. Landano*, 508 U.S. 165, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993). The FBI asserts that "[i]t is reasonable to assume, due to the nature of these activities, that the sources of information would not have provided the information to the FBI except under promise of express confidentiality or under circumstances in which confidentiality was implied." Defendant's Opposition at 7, citing Defendant's Exhibit 2 ¶ 50. An implied promise of confidentiality may indeed arise from the nature of the crime and from the source's relation to it, *Landano*, 113 S.Ct. at 2023. In this case, however, the FBI's generalized assertion of crimes relating to Communist Party activities is not enough to support the assertedly "reasonable assumption."

If the FBI is unable to augment its showing of law enforcement purposes and confidential sources, its reliance on Exemption 7(D) cannot be sustained.

### Exemption 2

■ Exemption 2 permits an agency to withhold material "related solely to the internal personnel rules and practices of an agency," 5 U.S.C. § 552(b)(2). Applying this exemption, the FBI has withheld permanent informant symbol numbers and "T-symbol" numbers, both of which mask the identities of confidential informants. Informant symbols are within the ambit of Exemption 2 because they are internal codes used by law enforcement personnel and are of no intrinsic use to the public. *Lesar v. U.S. Department of Justice*, 636 F.2d 472, 485–86 (D.C.Cir.1980). Moreover, even if the rationale of *Lesar* may not fit this case, releasing information about informant codes would result in the circumvention of an agency regulation. *Founding Church of Scientology v. Smith*, 721 F.2d 828, 830–31 n. 4 (D.C.Cir.1983).

### Exemption 7(C)

Exemption 7(C) entitles the government to withhold information gathered for law enforcement purposes whose release "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). If the documents in question were gathered for law enforcement purposes—a proposition that has not been established, *supra*—this exemption would easily apply to the law enforcement agents, bystander third parties, financial and commercial actors, and possible investigatory targets whose names have never been revealed, *see* Davis Decl. ¶¶ 27–48, and who are *still alive*. The public interest in this case—chiefly historical—is substantial but not enough to outweigh the interests of living persons. *See Fitzgibbon v. CIA*, 911 F.2d 755, 767–68 (D.C.Cir.1990).

■ The issue raised by this exemption (apart from the question of whether the information was gathered for law enforcement purposes) is how to determine whether the affected parties are alive. *See generally Summers v. Department of Justice*, 140 F.3d 1077, 1084 (D.C.Cir.1998) (Silberman, J., concurring). To avoid person-by-person analysis, the following rule will govern in this case: if 50 years have passed since the date of the document or the event it describes, whichev-

**82**

er is earlier, it will be presumed that the informant is deceased. The FBI may rebut the presumption. If the presumption is not rebutted, Exemption 7(C) will not apply.

\*　　\*　　\*　　\*　　\*　　\*

An appropriate order accompanies this memorandum.

### ORDER

For the reasons set forth in the accompanying memorandum, it is this 28th day of September, 1998

**ORDERED** that plaintiff's motion for summary judgment [# 39] is **denied.** It is

**FURTHER ORDERED** that defendant's motion for summary judgment [# 32] is **denied.** And it is

**FURTHER ORDERED** that defendant may have until October 28, 1998, to augment the record with respect to FOIA Exemptions 7(C) and 7(D) and to renew its motion with respect to those exemptions.