# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued March 21, 2013

Decided July 12, 2013
Unsealed August 7, 2013

No. 11-7126

LEOLA SMITH,
APPELLANT

v.

CATHY L. LANIER, CHIEF, METROPOLITAN POLICE
DEPARTMENT - IN HER PERSONAL AND OFFICIAL CAPACITIES, ET
AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-00808)

*James R. Klimaski* argued the cause for appellant. With him on the briefs were *John P. Racin* and *Lynn I. Miller*.

*James C. McKay Jr.*, Senior Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellees. With him on the brief were *Irvin B. Nathan*, Attorney General, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor General.

Before: ROGERS and TATEL, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: After the Metropolitan Police Department searched Leola Smith's house and found no illegal drugs, she sued the Chief of Police and others, alleging that an MPD officer lied in the affidavit used to procure the search warrant. The district court, finding that Smith failed to raise a genuine issue of material fact as to the affidavit's veracity, granted summary judgment to defendants. We affirm.

## I.

On July 13, 2007, MPD Officer Thomas Ellingsworth submitted an affidavit to a D.C. Superior Court Judge seeking a warrant to search appellant Leola Smith's property at 1812 9th Street NW, Washington, D.C. In the affidavit, Ellingsworth stated that an MPD confidential informant ("CI") had carried out a controlled drug buy at Smith's property. According to Ellingsworth, a CI contacted him "[w]ithin the past seventy-two hours . . . in reference to illegal drug activity occurring within the premises known as 1812 9th Street NW, Washington D.C." The CI advised Ellingsworth that "individuals are selling crack cocaine from within the residence." Ellingsworth then "provided the CI with Metropolitan Police Department funds and dropped [the CI] off" near Smith's property. "Once inside the building the CI advised that [the CI] knocked on the house door and an unknown subject answered." The CI advised the individual of the CI's "intention to purchase a quantity of cocaine," entered the house, and "handed that individual the MPD funds in exchange for crack cocaine." After leaving the premises, the CI "handed the M.P.D. officer a piece of white paper which

contained a loose white rock like substance, a portion of which field tested positive for cocaine base."

Based on Ellingsworth's affidavit, the Superior Court Judge approved the warrant application, and on July 14 Ellingsworth and other MPD officers conducted a search of Smith's residence. The search yielded no illegal drugs.

Smith, along with Dion Franklin, another person living at the property, then filed suit in the United States District Court against Chief of Police Cathy Lanier, the District of Columbia, and several MPD officers, alleging, among other things, that the search violated their Fourth Amendment rights. Specifically, they alleged that Ellingsworth lied when he stated in his affidavit that a CI had carried out a controlled drug buy at the property. *See* Am. Compl. ¶¶ 88–94.

Defendants subsequently moved for a protective order to limit discovery regarding the CI, invoking the "informer's privilege," which permits the government "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States*, 353 U.S. 53, 59 (1957). Finding the informer's privilege applicable and concluding that no exception was warranted, the district court granted defendants' motion for a protective order.

At some point during discovery, Smith's lawyer learned that the MPD was unable to locate the file for the CI who allegedly participated in the controlled buy. Apparently as a result, the district court ordered defense counsel to "submit an ex parte affidavit attesting to counsel's efforts to meet with the confidential informant, the results of such a meeting," and "the substance of what [counsel] has learned, if anything, from the confidential informant" about the events related to

the controlled drug buy. The district court also directed counsel to file a public affidavit "attesting to the scope and results of the search made for relevant documents, including but not limited to: the originals of documents already produced; any documents or records reflecting or relating to the controlled buy and any drugs allegedly bought by the confidential informant."

Pursuant to this order, counsel filed sealed and *ex parte* declarations by three MPD officers, including Inspector Brian Bray. At a status conference the next day, the district court informed Smith's counsel of the *ex parte* declarations and explained that Inspector Bray "showed me the file that is approximately five, six inches thick regarding the C.I. in this case. This file covers many years. And it is my information and I have every reason to believe it is correct that this is an active C.I." The district court added, however, that "I think it's fair to say that . . . the documents that this investigator has reviewed do not relate specifically to" the date of the controlled drug buy. According to the district court, Inspector Bray had "personally searched the file and has nothing to produce regarding this particular transaction"; the file "has not a piece of paper based on his search" related to the date of the controlled drug buy.

Defendants subsequently moved for summary judgment, and the district court granted the motion in part and denied it in part. *Smith v. Lanier*, 779 F. Supp. 2d 79 (D.D.C. 2011). With respect to the claim that Ellingsworth lied in his affidavit regarding the controlled drug buy, the district court found that plaintiffs had failed to raise a genuine issue of material fact sufficient to survive summary judgment. *Id.* at 86. According to the court, plaintiffs had "submitted no affirmative evidence that Ellingsworth concocted a fake informant"; instead, "the only 'evidence' plaintiffs have

introduced to support this claim is based on speculation and innuendo." *Id.* The district court rejected plaintiffs' argument that "the absence of police records relating to the informant creates a genuine question as to whether the informant ever existed," explaining that plaintiffs "provided no case law suggesting that missing police records alone are sufficient to transform the existence of a CI into a genuine question of fact." *Id.* In addition, the court noted that "[a]lthough defendants concede that the working file and unit file relating to the CI are missing," they had "produced documentation showing that a CI performed a controlled drug buy at the Property," including documents demonstrating "that a white rock substance was obtained by the CI as a result of the controlled buy." *Id.* at 86 n.5.

Although the district court found that plaintiffs had "failed to place any material fact as to the informant's existence into dispute," it explained that it had "[n]evertheless . . . reviewed the affidavits submitted by defendants *ex parte* and the (ample) documentation of the controlled buy, and has conducted an *in camera* hearing to make sure the informant indeed existed." *Id.* (internal quotation marks omitted). "Having considered all this evidence," the court concluded that "plaintiffs' unsupported allegations do not create an issue of material fact." *Id.*

The district court also granted summary judgment to defendants on the remainder of plaintiffs' claims, with the exception of Franklin's unreasonable search claim and both plaintiffs' intentional tortious destruction of property claims, which proceeded to trial. *Id.* at 90, 93. During the trial, the district court granted defendants' oral motion to dismiss the destruction of property claims. The trial proceeded on Franklin's unreasonable search claim, and the jury returned a verdict in his favor.

Smith alone now appeals, challenging only the district court's grant of summary judgment on her claim that Ellingsworth lied in his affidavit regarding the controlled drug buy. "We review the district court's grant of summary judgment de novo and may affirm only if, viewing the evidence in the light most favorable to [Smith] and giving [her] the benefit of all permissible inferences, we conclude that no reasonable jury could reach a verdict in [her] favor." *Jones v. Bernanke*, 557 F.3d 670, 674 (D.C. Cir. 2009).

## II.

Smith first argues that the district court improperly relied on *ex parte*, *in camera* evidence to grant summary judgment in favor of defendants. In support, she invokes " 'the firmly held main rule that a court may not dispose of the merits of a case on the basis of *ex parte*, *in camera* submissions.' " Appellant's Br. 18 (quoting *Abourezk v. Reagan*, 785 F.2d 1043, 1061 (D.C. Cir. 1986)). For their part, defendants argue that we need not determine whether the district court properly relied on *ex parte* evidence because summary judgment would have been appropriate even without taking the *ex parte* evidence into account. Given that our review is de novo and that "we can affirm a district court judgment on any basis supported by the record," *Carney v. American University*, 151 F.3d 1090, 1096 (D.C. Cir. 1998), we begin with that question.

Smith contends that the district court's grant of summary judgment was inappropriate because the MPD's inability to find records documenting the CI's participation in the alleged drug buy creates a genuine issue of material fact as to whether Ellingsworth lied in his affidavit about the occurrence of the buy. But even if the absence of these documents gives rise to an inference in Smith's favor, *see* Fed. R. Evid. 803(7); *Stevenson v. Linens of the Week*, 688 F.2d 93, 98–99 (D.C.

Cir. 1982) (explaining "the principle that the absence of an entry in a business record is probative of the non-occurrence of the event in question"), this inference is insufficient to survive summary judgment because other record evidence—not including the *ex parte* affidavits—demonstrates that a controlled drug buy did in fact take place at Smith's residence. Specifically, the record contains a photocopy of a heat seal bag used to contain contraband that states that Ellingsworth seized "white paper containing white rock" on July 11, 2007 from "1812 9th St. NW," Smith's address. By corroborating Ellingsworth's claim that drugs were in fact recovered from Smith's property within seventy-two hours of July 13, 2007, this record negates any inference arising from the missing CI documents.

Instead of attacking the evidentiary force of the heat seal bag, Smith points to discrepancies in dates in other MPD documents in the record. One of these records—a drug property report with an affixed index card—states that "white piece of paper containing white" [sic] was "recovered in the Northwest section of DC" on July 11, 2007 but also indicates the evidence being "received by" an Officer Castor on *July 10*. Another document—a page from the MPD Property Log Book—records Ellingsworth's recovery of "white paper containing white rock" on *July 7*. According to Smith, these discrepancies render the two documents unreliable. But even assuming this is true, Smith offers no real response to the key piece of evidence in the record—the heat seal bag—which lists July 11 as the relevant date and accurately records Smith's address. She suggests that the record could have been "changed [or] recreated without any difficulty," Oral Arg. Rec. 5:54–5:58, but we have made clear that a "bare allegation" of fabrication "does not suffice to create a genuine issue as to the authenticity of [a] document." *Ostrzenski v. Columbia Hospital for Women Foundation, Inc.*, 158 F.3d

1289, 1291 (D.C. Cir. 1998). Thus, given the heat seal bag's corroboration of the occurrence of a drug buy at Smith's property, and given Smith's failure to proffer evidence undermining the evidentiary force of this record, Smith's reliance on inconsistencies among other police records is insufficient to identify a material issue of disputed fact.

## III.

For the foregoing reasons, we affirm.

*So ordered*.