# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued January 14, 2025          Decided July 15, 2025

No. 23-5244

GARY SEBASTIAN BROWN, III,
APPELLANT

v.

FEDERAL BUREAU OF INVESTIGATION,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-01639)

———

*Joshua M. Wesneski*, appointed by the court, argued the cause as *amicus curiae* in support of appellant.  With him on the briefs were *Chloe S. Fife* and *Zachary D. Tripp*, appointed by the court.

*Gary Sebastian Brown III,* pro se, argued the cause and filed the briefs for appellant.

*Sarah N. Smith*, Attorney, U.S. Department of Justice, argued the cause for appellee.  With her on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, and *Mark B. Stern*, Attorney.  *Kenneth A. Adebonojo*

and *Jane M. Lyons*, Assistant U.S. Attorneys, entered appearances.

Before: RAO and WALKER, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* WALKER.

WALKER, *Circuit Judge*: Gary Sebastian Brown, III filed a Freedom of Information Act request with the FBI for "witness accounts, narratives, or statements" related to the 2015 terrorist attack in San Bernardino, California. JA 16. Brown contends that the FBI's search was inadequate, and that the FBI improperly withheld responsive information. The district court granted summary judgment for the FBI. Because the FBI's search was adequate and its redactions were consistent with FOIA, we affirm.

## I. Background

On November 7, 2019, Brown sent a FOIA request to the FBI for "any witness accounts, narratives, or statements provided by witnesses from an incident which occurred on December 2nd, 2015 at the Inland Regional Center in San Bernardino, CA." JA 16. "Of particular importance" to Brown were "any descriptions of the perpetrators such as, the number of attackers, their behavior, apparel, equipment, and any other details regarding their appearance." *Id.*

A few weeks later, the FBI sent Brown 19 pages it had previously released in response to a similar FOIA request. The FBI explained that it provided the previously released documents in "an effort to" fulfill Brown's request "as expeditiously as possible," and that Brown could request "an additional search" if the provided records were unsatisfactory.

JA 19. Brown was unsatisfied, so he requested an additional search "consistent with [his] original request." JA 22-23.

The FBI conducted a new search and located responsive records. But because the resulting records were law-enforcement records related to a pending investigation, the FBI invoked FOIA Exemption 7(A) and declined to release them. *See* 5 U.S.C. § 552(b)(7)(A) (exempting from disclosure "law enforcement records" that "could reasonably be expected to interfere with enforcement proceedings").

Brown pursued an administrative appeal. That appeal was unsuccessful, so in June 2021, Brown filed a pro se action in district court. Then, in May 2022, the FBI determined that its investigation into the San Bernadino attack "was no longer pending," and that Exemption 7(A) "was no longer applicable." JA 57. So it released a tranche of records to Brown and moved for summary judgment.

The FBI attached a 42-page declaration to its summary judgment motion, which explained how the FBI conducted its search and its rationales for applying various FOIA exemptions. The declaration stated that the FBI searched its Central Records System for "Inland Regional Center," the location of the attack. JA 62. The FBI then filtered the results for witness interviews, which it understood to be the object of Brown's request. That yielded 411 pages. Pursuant to various FOIA exemptions, the FBI redacted many of those pages and withheld one entirely. It also withheld four duplicative pages. In total, the FBI provided Brown 406 pages.

The district court granted summary judgment for the FBI. Brown appealed. We appointed Joshua M. Wesneski as an

amicus to present arguments in favor of Brown's position.[1]

## II. Analysis

The Freedom of Information Act requires agencies to disclose records upon request unless one of FOIA's exemptions applies.  5 U.S.C. § 552.  Brown argues that the FBI's search was inadequate because it construed his request too narrowly, and that the FBI misused Exemptions 6, 7(C), and 7(D) to withhold records.  Our review of the district court's grant of summary judgment is de novo.  *Kowal v. United States Department of Justice*, 107 F.4th 1018, 1027 (D.C. Cir. 2024).

## A. Adequacy of the FBI's Search

FOIA requires agencies to make "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby v. United States Department of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  "An agency need not 'search every record system' or 'demonstrate that all responsive documents were found and that no other relevant documents could possibly exist.'"  *Watkins Law & Advocacy, PLLC v. United States Department of Justice*, 78 F.4th 436, 442 (D.C. Cir. 2023) (quoting *Oglesby*, 920 F.2d at 68).  Instead, our inquiry focuses on "whether the agency's search was reasonable based on the specific information requested and the agency's efforts to produce that information."  *Kowal*, 107 F.4th at 1027; *see also Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986) ("adequacy is measured by the reasonableness of the effort in light of the specific request").

---

[1] Mr. Wesneski has ably discharged his duties, and we thank him and the other Amicus counsel of record for their assistance.

Brown argues that the FBI construed his request for "witness accounts, narratives, or statements" too narrowly by searching only for witness interviews. JA 16. We disagree. Although we have said that "an agency . . . has a duty to construe a FOIA request liberally," *Nation Magazine, Washington Bureau v. United States Customs Service*, 71 F.3d 885, 890 (D.C. Cir. 1995), an agency is required only "to read [the request] as drafted," *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984). In addition, a FOIA requester bears the burden of "reasonably describ[ing]" the records he seeks, 5 U.S.C. § 552(a)(3)(A), in a manner that "the agency is able to determine precisely what records are being requested." *Kowalczyk v. Department of Justice*, 73 F.3d 386, 388 (D.C. Cir. 1996) (cleaned up). Consistent with these principles, "[a]gencies have the discretion to construe requests reasonably." *Kowal*, 107 F.4th at 1028.

Here, the FBI had to translate Brown's request for "witness accounts, narratives, or statements" into agency parlance. Given the context of Brown's request — seeking records related to an FBI investigation — the FBI construed Brown's request against the backdrop of its standard investigative practices. It determined that the information Brown sought — "witness accounts, narratives, or statements" — would have been captured through formal witness interviews and memorialized on FD-302 forms.[2] So it crafted its search accordingly.

Brown believes that a broader search could have uncovered "records of 911 calls," "logs and audio records of police radio communications," and "raw recordings of witness

---

[2] "FD-302s are internal FBI forms in which evidence is often documented, usually the results of FBI interviews." JA 140.

interviews." Appellant Br. 43. But Brown's speculation as to what other records the FBI may possess — particularly those which would have been generated by other law enforcement agencies — "is insufficient to demonstrate" that the FBI's search was "inadequate." *Kowal*, 107 F.4th at 1029 (citing *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991)). Moreover, our inquiry turns on the reasonableness of the FBI's approach — not "whether there might exist any other documents possibly responsive to the request." *Weisberg v. United States Department of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

Brown is, of course, free to "submit a second, more specific FOIA request." *Kowal*, 107 F.4th at 1028. But because the FBI's search was reasonable, we hold that it satisfies FOIA.

### B. The FBI Properly Withheld Information

Next, Brown challenges the FBI's invocation of Exemptions 6, 7(C), and 7(D) to withhold certain records. We uphold an agency's reliance on a FOIA exemption if the agency "describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith." *Judicial Watch, Inc. v. United States Department of Defense*, 715 F.3d 937, 940-41 (D.C. Cir. 2013) (cleaned up).

Additionally, an agency may withhold information under one of these exemptions "only if . . . the agency reasonably foresees that disclosure would harm an interest protected by" the relevant exemption, or if "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A). To satisfy that requirement, the

agency must "articulate both the nature of the harm from release and the link between the specified harm and specific information contained in the material withheld." *Reporters Committee for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021) (cleaned up).

### 1. Exemptions 6 & 7(C)

The FBI relied on Exemptions 6 & 7(C) to withhold personal information about FBI employees, other federal and local government personnel, and third parties.[3]  On appeal, Brown challenges only the FBI's withholding of names and identifying information about: (1) third-party sources; (2) third parties merely mentioned; and (3) third-party victims.

Exemption 7(C) permits agencies to withhold "records or information compiled for law enforcement purposes" when the release of such records "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).   To invoke this exemption, an agency must find that the privacy interests at stake outweigh any public interest in disclosure.  *SafeCard Services*, 926 F.2d at 1205.

Brown does not challenge the FBI's balancing of the public interest in disclosure.   Instead, he argues that the harms

---

[3] Exemption 6 covers "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  "When, as here, the request is for records compiled for law enforcement purposes, the information protected by Exemption 6 is a subset of that protected by Exemption 7(C), so we need only analyze the latter."  *Kowal*, 107 F.4th at 1030.

the FBI identified are not reasonably foreseeable and that the redactions were overbroad. We disagree.

*First*, the FBI detailed the foreseeable harms three separate groups could experience from disclosure.

- As for third-party sources, the FBI explained that because association with an FBI investigation "can carry an extremely negative connotation," disclosure of sources' identities "could subject these individuals to harassment or embarrassment, undue public attention, or unwanted inquiries for information related to their assistance." JA 78, 79. Even worse, sources "could also be targeted for retaliation by investigative subjects, those sympathetic to investigative subjects, or by those who simply disparage cooperation with law enforcement." JA 79.

- As for third parties merely mentioned, the FBI explained that disclosure of their identities could subject them "to possible harassment or criticism and focus derogatory inferences and suspicion" on those "tangentially mentioned in conjunction with FBI investigative efforts." JA 79-80.

- And as for third-party victims, the FBI explained that it withheld identifying information to avoid inflicting "unsolicited and unnecessary attention" on victims, to protect their "dignity and privacy," and to avoid "forc[ing] them to relive traumatic events." JA 80-81.

With those explanations, the FBI identified reasonably foreseeable harms linked to the disclosure of the personally identifiable information the FBI withheld.

*Second*, Brown points to certain paragraph-long redactions and contends that those redactions cannot possibly contain only personally identifiable information. Appellant Br. 25-27; *see also* 5 U.S.C. § 552(a)(8)(A)(ii)(II) (agencies must "take reasonable steps necessary to segregate and release nonexempt information"). But Brown misunderstands the nature of the redactions. As the district court explained, the FBI invoked additional exemptions "on nearly every page where [Brown] has challenged the use of Exemption 7(C)." *Brown v. FBI*, No. 21-cv-01639, 2023 WL 5333210, at *13 (D.D.C. Aug. 18, 2023). Those other exemptions — particularly Exemption 7(D), discussed below — justify the longer redactions.

Therefore, we conclude that the FBI properly invoked Exemptions 6 and 7(C).

## 2. Exemption 7(D)

Brown also challenges the FBI's invocation of Exemption 7(D). That exemption permits the FBI to withhold "records or information compiled for law enforcement purposes" that "could reasonably be expected to disclose the identity of a confidential source" and, in criminal investigations, the "information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). Here, the exemption is met because witnesses provided information to the FBI "under implied assurances of confidentiality." Appellee Br. 28.

The FBI adequately explained why all the witnesses had a reasonable expectation of confidentiality. Because of the nature of the crime — a gruesome, ISIS-inspired terrorist attack — and the witnesses' "proximity . . . to the investigative subjects and events they described," it is "reasonable to infer"

that sources would not want to be publicly associated with the attack. JA 85, 86; *United States Department of Justice v. Landano*, 508 U.S. 165, 179 (1993) ("the character of the crime at issue" and "the source's relation to the crime" "may be relevant to determining whether a source cooperated with the FBI with an implied assurance of confidentiality"). Moreover, much of the information the witnesses provided is singular in nature and could be attributed to them "by those familiar with the events described." JA 85. Thus, disclosure of the information the witnesses provided "could subject these individuals, as well as their families, to retaliation or backlash."[4] JA 86.

The FBI also adequately explained how disclosure of witnesses' descriptions of the shooters would cause foreseeable harm to the FBI's interest in protecting the identity of confidential sources.[5] That harm is twofold.

*First*, as discussed above, disclosure would create a risk of

---

[4] Brown cites *Landano* for the uncontroversial proposition that there is no presumption that "*all* FBI sources" are "confidential." 508 U.S. at 174. To the extent this argument is preserved, it doesn't help Brown. The *Landano* Court emphasized that although there is no "prophylactic rule protecting the identities of all FBI criminal investigative sources," *id.* at 180-81, "the Government often can point to" "circumstances in which an implied assurance of confidentiality fairly can be inferred," *id.* at 179. It has done so here.

[5] Amicus also argues that the district court failed to address foreseeable harm, and that we should remand to the district court to evaluate that requirement in the first instance. But our review is de novo, and "we can affirm a district court judgment on any basis supported by the record." *Smith v. Lanier*, 726 F.3d 166, 169 (D.C. Cir. 2013) (quoting *Carney v. American University*, 151 F.3d 1090, 1096 (D.C. Cir. 1998)). So a remand is not necessary.

harm for witnesses. Many of the witness accounts contain "singular" descriptions of the shooters that could be attributed to specific witnesses — thereby exposing those witnesses to reprisal and retaliation. JA 86. Brown speculates that the FBI's redactions are overly broad and omit more than just singular descriptions. But Brown has offered no material reason to doubt the FBI, and bolstering the FBI's credibility is the fact that it did not redact certain non-singular descriptions of the shooters. *See, e.g.*, JA 241, 254.

*Second*, the FBI explained that disclosure would undermine the efficacy of future witness interviews — "one of the FBI's most important means of collecting information" — because witnesses are more likely to "hedge or withhold information" if they believe "their cooperation with the FBI will later be made public." JA 84, 85. Amicus questions how one could "deter cooperation with an investigation that has concluded." Amicus Br. 39. But that framing is too narrow: The FBI has an institutional interest in ensuring witness cooperation in *future* investigations, not just its investigation into the San Bernadino attack.

Amicus points out that the FBI has invoked an interest in ensuring future witness cooperation "in numerous other cases involving Exemption 7(D) but arising under entirely different facts." Amicus Reply Br. 17. But that in no way belies the FBI's invocation of the same interest here. Rather, it is difficult to imagine a criminal investigation in which that interest would *not* be applicable. Perhaps that's why Exemption 7(D) categorically exempts from disclosure "information furnished by a confidential source" in criminal investigations, 5 U.S.C. § 552(b)(7)(D), unlike other FOIA exemptions that require fact-specific inquiries to determine whether a specific interest would be served by withholding records, *cf., e.g.*, *id.* § 552(b)(6) (requiring a finding that

disclosure of "personnel and medical" records "would constitute a clearly unwarranted invasion of personal privacy"); *id.* § 552(b)(7)(A) (requiring a finding that disclosure of "law enforcement records" could "interfere with enforcement proceedings"). Accordingly, we are doubtful that the FBI needed to articulate any harm beyond the harm already identified in Congress's decision to create a special exemption for "information furnished by a confidential source." *Id.* § 552(b)(7)(D).

We therefore conclude that the FBI validly withheld information under Exemption 7(D).

## C. In Camera Review

Finally, Brown argues that the district court should have reviewed the redactions in camera. We review a district court's denial of in camera review for abuse of discretion. *ACLU v. United States Department of Defense*, 628 F.3d 612, 626 (D.C. Cir. 2011).

As Brown acknowledges, district courts have "broad discretion" in determining whether to order in camera review. Appellant Br. 20 (quoting *Spirko v. U.S. Postal Service*, 147 F.3d 992, 996 (D.C. Cir. 1998)); *see also* 5 U.S.C. § 552(a)(4)(B) (permitting, but not requiring, district courts to conduct in camera review in FOIA cases). Here, the FBI provided a detailed declaration explaining why it invoked various exemptions; there is no evidence of bad faith; and neither Brown nor Amicus has identified anything in the record that contradicts the FBI's declaration. *Cf. ACLU*, 628 F.3d at 626 (not an abuse of discretion to deny in camera review absent "contradict[ion] in the record" or "evidence . . . of agency bad faith"). So the district court did not abuse its discretion in denying in camera review.

### III. Conclusion

Because the FBI reasonably construed Brown's request and appropriately withheld records exempt from disclosure, we affirm the district court.

*So ordered.*